# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### February 6, 2014 Session

## SANDY EUGENE WOMACK ET AL. v. CORRECTIONS CORPORATION OF AMERICA D/B/A WHITEVILLE CORRECTIONAL FACILITY

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Davidson County**
**No. 11C3600      Thomas W. Brothers, Judge**

---

**No. M2012-00871-SC-R11-CV** - Filed September 22, 2014

---

This appeal involves whether the statute localizing venue for lawsuits filed by indigent inmates applies to lawsuits based on causes of action that accrue when an inmate is housed in a facility operated by a private corporation. An inmate housed at a correctional facility operated by a private entity filed suit in the Circuit Court for Davidson County, alleging that the corporation had failed to address his medical needs. The corporation moved to dismiss the suit or to transfer it to Hardeman County where the facility is located in accordance with Tenn. Code Ann. § 41-21-803 (2014). The Davidson County court granted the motion and transferred the case to Hardeman County but also gave the inmate permission to pursue an interlocutory appeal. The Court of Appeals granted the interlocutory appeal and affirmed the trial court. *Womack v. Corrections Corp. of Am.*, No. M2012-00871-COA-R10-CV, 2012 WL 6675094 (Tenn. Ct. App. Dec. 20, 2012). We granted the inmate's application for permission to appeal. We have determined that Tenn. Code Ann. § 41-21-803 does not apply to this inmate's lawsuit because his cause of action did not accrue while he was housed in a facility operated by the Tennessee Department of Correction within the meaning of that statute. Accordingly, we reverse the judgment of the Court of Appeals and remand the case to the trial court for further proceedings.

### Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed and Remanded

WILLIAM C. KOCH, JR., J., delivered the opinion of the Court, in which GARY R. WADE, C.J., JANICE M. HOLDER, CORNELIA A. CLARK, and SHARON G. LEE, JJ., joined.

Allen Barnes, Hermitage, Tennessee, for the appellants, Sandy Eugene Womack and Stacey Womack.

James I. Pentecost and Brittani C. Kendrick, Jackson, Tennessee, for the appellee, Corrections Corporation of America.

**OPINION**

**I.**

Sandy Eugene Womack was convicted in 1989 of armed robbery and simple robbery and was sentenced to a lengthy term of confinement with the Tennessee Department of Correction ("TDOC").[1]  In February 2010, Mr. Womack was housed at the Whiteville Correctional Facility in Hardeman County.  The facility is owned and operated by Corrections Corporation of America ("CCA"), a private entity, under a contract with the State of Tennessee.

According to Mr. Womack, he entered the Whiteville facility with a cut on his right ankle.  He asserts that he did not receive appropriate treatment for this cut and, as a result, his right leg was amputated below the knee on September 28, 2010.  On September 9, 2011, Mr. Womack and his spouse[2] filed a complaint against CCA in the Circuit Court for Davidson County.[3]  At the time he filed suit, Mr. Womack was housed at the Deberry Special Needs Facility, a correctional facility in Davidson County operated by the TDOC.  He alleged in his complaint that Davidson County was CCA's principal place of business and that "numerous negligent acts, omissions, and/or intentional acts by CCA, its employees, and its agents result[ed] in the amputation of [his] leg."

On January 3, 2012, CCA filed a motion to dismiss the complaint, or in the alternative to transfer the case to Hardeman County.  CCA argued that under Tenn. Code Ann. § 41-21-803 (2014), the proper venue for Mr. Womack's lawsuit was Hardeman County rather than Davidson County.  CCA also insisted that Tennessee law had established that Tenn. Code Ann. § 41-21-803 "effectively localized actions brought by prisoners."

---

[1]*See State v. Womack*, No. 01C01-9507-CC-00235, 1996 WL 518268, at *1 (Tenn. Crim. App. Sept. 13, 1996) (No Tenn. R. App. P. 11 application filed); *State v. Womack*, No. 01C01-9003-CC-00077, 1990 WL 103638, at *1 (Tenn. Crim. App. July 26, 1990), *perm. app. denied* (Tenn. Oct. 29, 1990).

[2]For the sake of simplicity, we will refer to Mr. Womack alone when discussing the filings of the plaintiffs.

[3]Mr. Womack filed his complaint through counsel but also filed a pauper's oath.

Mr. Womack filed a response in opposition to CCA's motion. He argued that Tenn. Code Ann. § 41-21-803 was inapplicable because the Whiteville Correctional Facility was operated by CCA rather than by TDOC. He also insisted that venue was proper in Davidson County pursuant to the statutory provisions governing transitory actions. *See* Tenn. Code Ann. §§ 20-4-101, -104 (Supp. 2014). Following a hearing on March 2, 2012, the trial court, citing *Hayes v. State*, 341 S.W.3d 293, 296 (Tenn. Ct. App. 2009), decided that Tenn. Code Ann. § 41-21-803 was controlling and that, as a more specific statute applicable to in forma pauperis lawsuits filed by state prisoners, it controlled over the more general statutes governing transitory causes of action.[4]

In his Tenn. R. Civ. P. 59 motion, Mr. Womack argued that *Hayes v. State* and the cases on which it relied[5] were distinguishable because they involved inmates housed in facilities operated by TDOC, rather than a facility owned and operated by a private corporation. CCA responded by pointing out that other courts had applied Tenn. Code Ann. § 41-21-803 in cases involving inmates housed in facilities operated by private entities.[6] Mr. Womack responded by pointing out that the Court of Appeals had previously noted in passing that "it is arguable that section 41-21-803 would not apply to a privately-managed correctional facility." *Clark v. South Cent. Corr. Facility*, No. M2006-00124-COA-R3-CV, 2007 WL 2093693, at *3 n.8 (Tenn. Ct. App. July 17, 2007) (No Tenn. R. App. P. 11 application filed); *see also Johnson v. Corrections Corp. of Am.*, No. M2004-01301-COA-R3-CV, 2006 WL 236899, at *2 (Tenn. Ct. App. Jan. 31, 2006), *perm. app. denied* (Tenn. Aug. 21, 2006).

The parties returned to the trial court on March 30, 2012. The trial court once again found *Hayes v. State* to be controlling and ordered that the case be transferred to Hardeman County. However, in light of the dicta in *Clark v. South Central Correctional Facility* and *Johnson v. Corrections Corp. of America*, the trial court granted Mr. Womack permission to

---

[4]*See* Tenn. Code Ann. § 16-1-116 (2009).

[5]Mr. Womack singled out *Hawkins v. Tennessee Department of Correction*, 127 S.W.3d 749 (Tenn. Ct. App. 2002) (No Tenn. R. App. P. 11 application filed) and *Howse v. Campbell*, No. M1999-01580-COA-R3-CV, 2001 WL 459106 (Tenn. Ct. App. May 2, 2001) (No Tenn. R. App. P. 11 application filed).

[6]CCA identified the Memorandum Opinion in *Rice v. Turner*, No. M2004-02284-COA-R3-CV, 2007 WL 3445074 (Tenn. Ct. App. Nov. 15, 2007) (No Tenn. R. App. P. 11 application filed), and *Jones v. Tennessee Department of Correction*, No. M2004-01713-COA-R3-CV, 2007 WL 1241341 (Tenn. Ct. App. Apr. 27, 2007) (No Tenn. R. App. P. 11 application filed). Interestingly, as we will discuss hereafter in more detail, CCA also identified *Hayes v. State*, even though Mr. Womack had already contended it involved a facility operated by TDOC.

seek an interlocutory appeal in order to develop a uniform body of law.[7] *See* Tenn. R. App. P. 9(a).

The Court of Appeals granted Mr. Womack's interlocutory appeal.[8] Upon appeal, the court acknowledged prior language that "[i]t is certainly arguable that the legislature did not intend that the venue requirements in Tenn. Code Ann. § 41-21-803 apply to actions brought against a private corrections corporation." *Johnson v. Corrections Corp. of Am.*, 2006 WL 236899, at *2; *see also Clark v. South Cent. Corr. Facility*, 2007 WL 2093693, at *3 n.8. However, like the trial court, the intermediate appellate court found *Hayes v. State* to be controlling. Accordingly, the appellate court affirmed the ruling below, stating that "[s]ince '[Tennessee Code Annotated section 41-21-803] effectively localized actions brought by prisoners,' we must conclude that the proper venue in this matter lies in Hardeman County, where the CCA-operated facility is located." *Womack v. Corrections Corp. of Am.*, 2012 WL 6675094, at *3 (citations omitted). We granted Mr. Womack's application for permission to appeal.

**II.**

The issue presented in this case requires us to construe Tenn. Code Ann. § 41-21-803. Mr. Womack insists that the statute has no application to his lawsuit because, at the time his action accrued, he was housed in a facility operated by CCA rather than by TDOC. For its part, CCA argues that our courts have already correctly determined that the statute "effectively localized actions brought by prisoners." *Hayes v. State*, 341 S.W.3d at 296.

The construction of a statute and its application to the facts of a particular case present questions of law that we review de novo without a presumption of correctness. *Baker v. State*, 417 S.W.3d 428, 433 (Tenn. 2013); *Keen v. State*, 398 S.W.3d 594, 599 (Tenn. 2012), *cert. denied*, 134 S. Ct. 176 (2013).

Familiar rules guide our construction of a statute. Our duty is first to ascertain and then to fully effectuate legislative intent, taking care not to broaden a statute beyond its intended scope or unduly restrict its coverage. *Shore v. Maple Lane Farms, LLC*, 411

---

[7]The trial court stayed transfer of the case to Hardeman County pending disposition of the interlocutory appeal.

[8]We note, as did the Court of Appeals, that Mr. Womack incorrectly styled his application in the Court of Appeals pursuant to Tenn. R. App. P. 10 (permitting extraordinary appeal in the sole discretion of the appellate court). In granting Mr. Womack's application, the Court of Appeals nevertheless considered it under the standards for an appeal pursuant to Tenn. R. App. P. 9 because the trial court had, in fact, granted Mr. Womack's request to seek an interlocutory appeal.

S.W.3d 405, 420 (Tenn. 2013); *Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009). We must construe a statute in a reasonable manner "which avoids statutory conflict and provides for harmonious operation of the laws." *Baker v. State*, 417 S.W.3d at 433 (quoting *Frye v. Blue Ridge Neuroscience Ctr., P.C.*, 70 S.W.3d 710, 716 (Tenn. 2002)).

Our analysis naturally begins with the words used in the statute. *Shore v. Maple Lane Farms, LLC*, 411 S.W.3d at 420 (citing *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 526 (Tenn. 2010)). The words "must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012). We presume that every word in the statute has meaning and purpose and should be given full effect unless the obvious intention of the General Assembly indicates otherwise. *In re Estate of Trigg*, 368 S.W.3d 483, 490 (Tenn. 2012); *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). If the statutory language is clear and unambiguous, we apply its plain meaning, understood in its normal and accepted usage, without adopting a forced interpretation. *Baker v. State*, 417 S.W.3d at 433; *Knox Cnty. ex rel. Envtl. Termite & Pest Control, Inc. v. Arrow Exterminators, Inc.*, 350 S.W.3d 511, 524 (Tenn. 2011); *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004).

When necessary to resolve a statutory ambiguity or conflict, we may consider matters other than the statutory language – such as the broader statutory scheme, the history and purpose of the legislation, public policy, historical facts preceding or contemporaneous with the enactment of the statute, earlier versions of the statute, the caption of the act, and the legislative history of the statute – to discern the legislature's intent. *Pickard v. Tennessee Water Quality Control Bd.*, 424 S.W.3d 511, 518 (Tenn. 2013). However, these non-codified external sources "cannot provide a basis for departing from clear codified statutory provisions." *Mills v. Fulmarque, Inc.*, 360 S.W.3d at 368 (quoting *Lee Med., Inc. v. Beecher*, 312 S.W.3d at 528). A statute is ambiguous only if it "can reasonably have more than one meaning." *Lee Med., Inc. v. Beecher*, 312 S.W.3d at 527 & n.20 (citing *LeTellier v. LeTellier*, 40 S.W.3d 490, 498 (Tenn. 2001); *Bryant v. HCA Health Servs. of N. Tenn., Inc.*, 15 S.W.3d 804, 809 (Tenn. 2000)).

**III.**

Tenn. Code Ann. § 41-21-803 states:

> Except as otherwise provided by law, an action that accrued while the plaintiff inmate was housed in a facility operated by the [D]epartment [of Correction] shall be brought in the county in which the facility is located.

This provision does not exist in isolation. Significantly, the term "inmate" that appears in this statute is currently defined as "a person housed in a facility operated by the [D]epartment [of Correction], housed in a county jail or housed in a correctional facility operated by a private corporation pursuant to a contract with the state or local government." Tenn. Code Ann. § 41-21-801(4) (2014). However, this definition of "inmate," in contrast to the language of Tenn. Code Ann. § 41-21-803, has changed over time, and this change has interpretational significance. Accordingly, we will briefly recount the history of the statutory scheme to place the issue before us in context.

**A.**

Tenn. Code Ann. § 41-21-803 was enacted in 1996, as part of a larger set of statutory provisions aimed at governing civil litigation by prison inmates.[9] This "set of statutes was intended to reduce frivolous claims filed by inmates." *Hawkins v. Tennessee Dep't of Corr.*, 127 S.W.3d at 754. The General Assembly "sought to balance the constitutional right to meaningful access to the courts with the legitimate state interest in preventing the judicial system from being flooded with unmeritorious or frivolous complaints, filed by inmates at taxpayer expense." *Mandela v. Campbell*, No. M2001-01956-COA-R3-CV, 2003 WL 174788, at *3 (Tenn. Ct. App. Jan. 28, 2003) (No Tenn. R. App. P. 11 application filed).

The statutory scheme applies "only to a claim brought by an inmate in general sessions or a trial level court of record in which an affidavit of inability to pay costs is filed with the claim by the inmate." Tenn. Code Ann. § 41-21-802 (2014). If an inmate files a claim with an affidavit of inability to pay costs, the inmate must also file an affidavit listing "every lawsuit or claim previously filed by the inmate," Tenn. Code Ann. § 41-21-805(a)(1) (2014), complete with certain descriptive information, including whether the prior lawsuit or claim was dismissed as frivolous or malicious, Tenn. Code Ann. § 41-21-805(a)(2). The inmate must also provide "a current certified copy of the inmate's trust account statement." Tenn. Code Ann. § 41-21-805(c).

One of the central parts of the statutory scheme, as enacted in 1996, was a mechanism by which the "court shall order an inmate who has filed a frivolous or malicious claim to pay filing fees, court costs and any other related expenses." Tenn. Code Ann. § 41-21-807(a) (Supp. 1996). The scheme provided for the periodic withdrawal of funds from the inmate's trust account. Tenn. Code Ann. § 41-21-807(b)-(d).

---

[9]*See* Act of April 24, 1996, ch. 913, 1996 Tenn. Pub. Acts 569 (codified at Tenn. Code Ann. §§ 41-21-801 to -818 (Supp. 1996)).

As initially enacted, the statutory scheme defined an "inmate" as "a person housed in a facility operated by [TDOC] or housed in a county jail." Tenn. Code Ann. § 41-21-801(4) (Supp. 1996). In addition, it included the venue localizing provision that is currently found in Tenn. Code Ann. § 41-21-803. Thus, as originally enacted, even though the definition of "inmate" included persons incarcerated in facilities operated by TDOC and county jails, the venue provision was limited to only persons incarcerated in facilities operated by TDOC.

In 2001, the General Assembly amended the statutory scheme in two significant ways.[10] While the affidavit requirement of Tenn. Code Ann. § 41-21-805 remained unchanged, inmates were now "required to pay the full amount of the filing fee" even if they were filing in forma pauperis. Tenn. Code Ann. § 41-21-807(b)(1). In addition, the amended statute barred inmates from filing suits in forma pauperis if they had, on three or more prior occasions, brought a suit that was later dismissed as frivolous or malicious or for failure to state a claim upon which relief may be granted. Tenn. Code Ann. § 41-21-807(c).

While these significant substantive amendments are not germane to this appeal, the amendment to the definition of "inmate" is. This amendment expanded the scope of the definition of "inmate" to include a "person . . . housed in a correctional facility operated by a private corporation pursuant to a contract with the state or local government." Tenn. Code Ann. § 41-21-801(4). The scope and application of Tenn. Code Ann. § 41-21-803 must be understood against this backdrop.

**B.**

We acknowledge that the issue in this case – whether Tenn. Code Ann. § 41-21-803 localizes venue for an action that accrued while an inmate was housed in a privately operated corrections facility – has, over the course of time, left the Court of Appeals questioning its own decisions. The statute was enacted in 1996. The first appellate opinion mentioning the statute was issued the following year, *Sweatt v. Conley*, No. 01A01-9706-CH-00247, 1997 WL 749482, at *5 n.5 (Tenn. Ct. App. Dec. 5, 1997) (No Tenn. R. App. P. 11 application filed), and a steady stream of cases has followed over the course of the ensuing seventeen years. We will summarize the treatment accorded the statute by the Court of Appeals to place its decision in this case in context.

The first appellate opinion mentioning the statute merely noted its existence, pointing out that it was inapplicable because it was not yet effective at the time the suit was initiated.

---

[10] *See* Act of April 2, 2001, ch. 76, 2001 Tenn. Pub. Acts 137. It was also amended in 2002, but those amendments are not pertinent to this appeal. *See* Act of April 10, 2002, ch. 607, 2002 Tenn. Pub. Acts 1617 (amending Tenn. Code Ann. § 41-21-808).

*Sweatt v. Conley*, 1997 WL 749482, at *5 n.5.[11]  Just over two years later, the Court of Appeals again briefly mentioned Tenn. Code Ann. § 41-21-803, but did not "conclusively address" it.  *Davis v. Holland*, 31 S.W.3d 574, 577 (Tenn. Ct. App. 2000), *perm. app. denied* (Tenn. Sept. 18, 2000).  Mr. Davis had filed a complaint under 42 U.S.C. § 1983 against several TDOC employees alleging a violation of his constitutional rights.  At the time his action accrued, Mr. Davis was housed in a TDOC-operated facility in Lauderdale County.  He filed his complaint in the Circuit Court for Davidson County.  *Davis v. Holland*, 31 S.W.3d at 574-75.  The State moved to dismiss the complaint for, among other reasons, improper venue in light of Tenn. Code Ann. § 41-21-803.  *Davis v. Holland*, 31 S.W.3d at 575.  The trial court did not resolve the venue issue.  However, the trial court intimated that venue might be proper in Davidson County – if Mr. Davis alleged that the defendants resided there – based on *Sweatt v. Conley*, 1997 WL 749482, at *5 (concluding that a claim under 42 U.S.C. § 1983 is a transitory action subject to the venue provisions of Tenn. Code Ann. § 20-4-101).  *Davis v. Holland*, 31 S.W.3d at 575-76.

The venue issue was not raised on appeal.  Nevertheless, the Court of Appeals noted in passing that

> there was a strong implication in the trial court's ruling that venue for this case would have been proper in Davidson County if Mr. Davis had supplied it with the residential addresses of the individual defendants.  While that may be consistent with the result of [*Sweatt v. Conley*], we are not sure that case applies here, since it did not consider the effect of Tenn. Code Ann. § 41-21-803.

*Davis v. Holland*, 31 S.W.3d at 577.  Thus, the Court of Appeals in *Davis v. Holland* sowed the seeds for recognizing that Tenn. Code Ann. § 41-21-803 altered in some way the venue landscape for lawsuits filed by inmates upon a pauper's oath.

Those seeds took root the following year.  *Howse v. Campbell*, 2001 WL 459106, at *4.  Mr. Howse filed a civil rights action against the Commissioner of TDOC and others, alleging multiple violations of his constitutional rights while he was an inmate housed in a

---

[11]For assistance in our later discussion of the issue we point out that the Court of Appeals concluded that Mr. Sweatt's claim under 42 U.S.C. § 1983 was a transitory action, subject to the venue provisions of Tenn. Code Ann. § 20-4-101.  Mr. Sweatt, a prisoner housed in a TDOC-operated facility in Lake County, filed suit in Davidson County against multiple TDOC officials.  The court stated that "the proper venue in this case is either in the county where the cause of action arose or in the county where [Defendants] reside or are found."  *Sweatt v. Conley*, 1997 WL 749482, at *5.

TDOC-operated facility in Lake County. Mr. Howse filed his complaint in Davidson County. *Howse v. Campbell*, 2001 WL 459106, at \*1, \*4. The Court of Appeals for the first time squarely addressed the impact of Tenn. Code Ann. § 41-21-803, holding that "[a]s a result of this statute, transitory actions filed by state prisoners have essentially been localized by statute. Accordingly, venue for these suits lies in the county where the facility is located." *Howse v. Campbell*, 2001 WL 459106, at \*4. The court therefore concluded that "Mr. Howse should have filed his suit in the Circuit Court for Lake County rather than the courts in Davidson County." *Howse v. Campbell*, 2001 WL 459106, at \*4.

The holding of *Howse v. Campbell* bore fruit the following year when the Court of Appeals decided *Hawkins v. Tennessee Department of Correction*. Mr. Hawkins filed a petition for a common law writ of certiorari in Davidson County challenging the result of a prisoner disciplinary proceeding against him that occurred while he was housed in a TDOC-operated facility in Lauderdale County. *Hawkins v. Tennessee Dep't of Corr.*, 127 S.W.3d at 752. The trial court, relying on Tenn. Code Ann. § 41-21-803, "determined that venue was not proper in Davidson County, but that the action should have been brought in the county in which [the facility] was located." *Hawkins v. Tennessee Dep't of Corr.*, 127 S.W.3d at 753. The Court of Appeals agreed that "Tenn. Code Ann. § 41-21-803 effectively localized transitory actions filed by state prisoners," citing *Howse v. Campbell*, 2001 WL 459106, at \*4, and stated, "The clear language of Tenn. Code Ann. § 41-21-803 is that a civil action accruing while the inmate is incarcerated is to be brought in the county where the facility in which he or she is housed is located." *Hawkins v. Tennessee Dep't of Corr.*, 127 S.W.3d at 765. The court continued, "[W]e find the legislature clearly intended that lawsuits by state inmates against state entities, officials and employees, arising from conditions or other incidents of incarceration are to be brought in the county where the correctional facility is located." *Hawkins v. Tennessee Dep't of Corr.*, 127 S.W.3d at 765.

In the wake of *Hawkins*, the Court of Appeals consistently concluded that Tenn. Code Ann. § 41-21-803 localized venue in cases involving inmates housed in TDOC-operated facilities. However, in those opinions issued shortly after *Hawkins*, the holdings were tempered by the decision not to vacate the judgment because the prisoner's action was filed before *Hawkins* was issued and neither party raised the application of Tenn. Code Ann. § 41-21-803. *See, e.g.*, *Hitson v. Tennessee Dep't of Corr.*, No. M2001-02903-COA-R3-CV, 2003 WL 22209400, at \*1 n.2 (Tenn. Ct. App. Sept. 25, 2003) (No Tenn. R. App. P. 11 application filed)*; Jeffries v. Tennessee Dep't of Corr.*, 108 S.W.3d 862, 867 n.3 (Tenn. Ct. App. 2002), *perm. app. denied* (Tenn. May 12, 2003); *Hedges v. Tennessee Dep't of Corr.*, No. M2002-00140-COA-R3-CV, 2002 WL 31890869, at \*2 n.4 (Tenn. Ct. App. Dec. 31, 2002) (No Tenn. R. App. P. 11 application filed).

In 2003, less than a year after *Hawkins*, the Court of Appeals confronted for the first time after the enactment of Tenn. Code Ann. § 41-21-803, a case involving an inmate whose action accrued while he was housed in a facility operated by a private corporation. *Lewis v. Tennessee Dep't of Corr.*, No. M2002-00608-COA-R3-CV, 2003 WL 21171495 (Tenn. Ct. App. May 20, 2003), *perm. app. denied* (Tenn. Aug. 25, 2003). Mr. Lewis was housed in a correctional facility operated by CCA in Wayne County. The facility's disciplinary board found him guilty of a rules infraction and imposed a sentence of five days in administrative segregation. The decision was approved by the TDOC Commissioner's designee, the warden, and the Commissioner of Correction.[12] Thereafter, Mr. Lewis filed a petition for a writ of certiorari seeking review of the decision, naming TDOC and others as the respondents. The trial court ultimately dismissed the petition. *Lewis v. Tennessee Dep't of Corr.*, 2003 WL 21171495, at *3.

Upon appeal from the trial court's judgment, the Court of Appeals noted in passing that "Mr. Lewis filed his petition in the wrong county. Tenn. Code Ann. § 41-21-803 (1997) required the petition to be filed in Wayne County where the South Central Correctional Facility is located." *Lewis v. Tennessee Dep't of Corr.*, 2003 WL 21171495, at *1 n.4. However, the court extended the same treatment to this case that it had to similar cases involving TDOC-operated facilities,[13] declining to "vacate the judgment because Mr. Lewis filed his petition before we decided *Hawkins v. Tennessee Dep't of Corr.* and because neither party questioned venue in the trial court." *Lewis v. Tennessee Dep't of Corr.*, 2003 WL 21171495, at *1 n.4.

A similar case came before the Court of Appeals later that same year, and the court afforded it the same treatment. *Hicks v. Campbell*, No. M2001-00280-COA-R3-CV, 2003 WL 22438441, at *1 n.3 (Tenn. Ct. App. Oct. 28, 2003) (No Tenn. R. App. P. 11 application filed). In other words, *Lewis v. Tennessee Department of Correction* and *Hicks v. Campbell* were among several opinions issued over the course of approximately one year in which the

---

[12]The Court of Appeals pointed out that "[p]rivate prison operators do not have the authority to discipline prisoners." *Lewis v. Tennessee Dep't of Corr.*, 2003 WL 21171495, at *1 n.3 (citing Tenn. Code Ann. § 41-24-110(5) (1997)). Thus, "all punishments for disciplinary infractions other than verbal warnings imposed by employees of private prison operators must be approved by the Commissioner's designee." *Lewis v. Tennessee Dep't of Corr.*, 2003 WL 21171495, at *1 n.3.

[13]*Jeffries v. Tennessee Dep't of Corr.*, 108 S.W.3d at 867 n.3; *Hedges v. Tennessee Dep't of Corr.*, 2002 WL 31890869, at *2 n.4; *Hitson v. Tennessee Dep't of Corr.*, 2003 WL 22209400, at *1 n.2.

Court of Appeals reiterated the then-recent holding in *Hawkins*, using substantially similar language each time.[14]

In 2006, the Court of Appeals for the first time questioned the application of Tenn. Code Ann. § 41-21-803 in the context of an action that accrued while the inmate was housed in a facility operated by a private corporation. *Johnson v. Corrections Corp. of Am.*, No. M2004-01301-COA-R3-CV, 2006 WL 236899, at *2 (Tenn. Ct. App. Jan. 31, 2006), *perm. app. denied* (Tenn. Aug. 21, 2006). Mr. Johnson had filed a complaint for damages against CCA, alleging that it failed to provide him with proper dental care while he was housed in the South Central Correctional Facility, a correctional facility operated by CCA in Wayne County. Mr. Johnson filed his complaint in Davidson County. The trial court ultimately dismissed the complaint. *Johnson v. Corrections Corp. of Am.*, 2006 WL 236899, at *1.

Although the Court of Appeals did not dispose of Mr. Johnson's appeal on the basis of venue, the court noted that it had "consistently held that [Tenn. Code Ann. § 41-21-803] precludes adjudication of claims in the courts of Davidson County where the plaintiff inmate has claimed he was injured by the actions of agents of the Department of Correction while he was housed in a prison outside of Davidson County." *Johnson v. Corrections Corp. of Am.*, 2006 WL 236899, at *2. The court continued,

> While it is true that Mr. Johnson's alleged cause of action accrued while he was housed in a correctional facility, the facility at issue was operated by CCA, rather than the Tennessee Department of Correction, and Mr. Johnson named CCA as the sole defendant. Although we find no authority holding that [Tenn. Code Ann. § 41-21-803] does not apply to CCA-operated facilities, the wording of the statute itself limits its application to inmate causes of action that accrued while the inmate was "housed in a facility operated by the Department." It is certainly arguable that the legislature did not intend that the venue requirements in Tenn. Code Ann. § 41-21-803 apply to actions brought against a private corrections corporation.

*Johnson v. Corrections Corp. of Am.*, 2006 WL 236899, at *2.

The Court of Appeals reiterated this concern one year later, even though it dismissed an inmate's in forma pauperis action on the basis of improper venue under Tenn. Code Ann.

---

[14]The petitions in *Lewis v. Tennessee Department of Correction* and *Hicks v. Campbell* were filed before the 2001 amendments.

§ 41-21-803. *Clark v. South Cent. Corr. Facility*, No. M2006-00124-COA-R3-CV, 2007 WL 2093693, at *1, *3 n.8 (Tenn. Ct. App. July 17, 2007) (No Tenn. R. App. P. 11 application filed). Mr. Clark had filed a petition for a common law writ of certiorari seeking judicial review of a disciplinary proceeding, naming as respondents various TDOC officials and officials associated with the privately operated facility where he was housed – the South Central Correctional Facility in Wayne County. Mr. Clark filed his petition in Davidson County. The trial court ultimately dismissed the petition. *Clark v. South Cent. Corr. Facility*, 2007 WL 2093693, at *1.

The Court of Appeals affirmed on different grounds, concluding that "section 41-21-803 required that the petition be filed in Wayne County, the county in which the correctional facility is located." *Clark v. South Cent. Corr. Facility*, 2007 WL 2093693, at *3. However, the court pointed out that "it is arguable that section 41-21-803 would not apply to a privately-managed correctional facility." *Clark v. South Cent. Corr. Facility*, 2007 WL 2093693, at *3 n.8. Nevertheless, the Court of Appeals continued to follow the lead set in *Lewis v. Tennessee Department of Correction* and *Hicks v. Campbell* and hold that Tenn. Code Ann. § 41-21-803 localized venue for actions that accrued while an inmate was housed in a privately operated facility. *See, e.g.*, *Jones v. Tennessee Dep't of Corr.*, 2007 WL 1241341, at *1.

Ultimately, in 2009, the Court of Appeals decided *Hayes v. State*. Mr. Hayes was an inmate housed at the Hardeman County Correctional Facility. He filed a complaint under 42 U.S.C. § 1983 against multiple defendants, including TDOC and CCA. The opinion leaves some confusion on the issue of the operator of the facility, stating in one instance that it was a "TDOC facility," *Hayes v. State*, 341 S.W.3d at 296, but also reflecting that one of the defendants was CCA, *Hayes v. State*, 341 S.W.3d at 295.[15] Mr. Hayes filed his complaint in Davidson County, and the Chancery Court for Davidson County dismissed the complaint for improper venue. *Hayes v. State*, 341 S.W.3d at 295. The Court of Appeals affirmed, agreeing "with the trial court's finding that this cause must be brought in Hardeman County pursuant to Tenn. Code Ann. § 41-21-803." *Hayes v. State*, 341 S.W.3d at 296.

## C.

We now turn to the task at hand, construing Tenn. Code Ann. § 41-21-803. Naturally, we begin with the language of the provision. The statute designates local venue for "an action that accrued while the plaintiff inmate was housed in a facility operated by [TDOC]." Quite clearly, the statute does not refer to a facility operated by a private corporation such

---

[15]This circumstance may explain why both Mr. Womack and CCA cited the case in support of their respective positions before the trial court.

as CCA. We are mindful that courts "must be circumspect about adding words to a statute that the General Assembly did not place there." *Coleman v. State*, 341 S.W.3d 221, 241 (Tenn. 2011).

CCA argues, however, that "a privately owned prison is under the operation of [TDOC] as defined and used in the statute." More specifically, CCA contends that under *Friedmann v. Corrections Corp. of America*, 310 S.W.3d 366 (Tenn. Ct. App. 2009), *perm. app. denied* (Tenn. Mar. 1, 2010), "although CCA owns and runs [the Whiteville Correctional Facility], [the facility] is operated by [TDOC] as described in § 41-21-803 pursuant to the County Correctional Incentives Act of 1981."

We find CCA's argument unavailing. We recognize that in *Friedmann*, the Court of Appeals concluded that those CCA facilities "being operated pursuant to contracts with local governmental entities . . . pursuant to the County Correctional Incentives Act of 1981[16] . . . are being operated by CCA as the functional equivalent of a governmental agency." *Friedmann v. Corrections Corp. of Am.*, 310 S.W.3d at 379. However, *Friedmann* was a Public Records Act case. *Friedmann v. Corrections Corp. of Am.*, 310 S.W.3d at 374. The "functional equivalent" approach applied in *Friedmann* was adopted as an interpretation of specific language in the Public Records Act. *See Memphis Publ'g Co. v. Cherokee Children & Family Servs., Inc.*, 87 S.W.3d 67, 79 (Tenn. 2002). This Court construed the statutory language as we did "in light of our duty to construe the Tennessee Public Records Act liberally in favor of 'the fullest possible public access to public records.'" *Memphis Publ'g Co. v. Cherokee Children & Family Servs., Inc.*, 87 S.W.3d at 79 (quoting Tenn. Code Ann. § 10-7-505(d) (1999)). Needless to say, this matter is not a Public Records Act case. In this case, we are called upon to construe different statutory language. We therefore do not find *Friedmann* to be instructive.[17]

---

[16]The Court of Appeals noted that CCA operated the Whiteville Correctional Facility in Hardeman County pursuant to this statutory scheme under a contract with the Hardeman County Correctional Facilities Corporation. *Friedmann v. Corrections Corp. of Am.*, 310 S.W.3d at 379 n.6.

[17]For similar reasons, we also find unpersuasive CCA's reliance on the Private Prison Contracting Act of 1986, Tenn. Code Ann. §§ 41-24-101 to -115 (1990). CCA argues that the definition of "prison" and "facility" in Tenn. Code Ann. § 41-24-102(4) – "any adult institution operated by or under the authority of [TDOC]" – lends credence to its contention that a "facility operated by [TDOC]" includes a facility operated by a private corporation. However, CCA readily admits that the Private Prison Contracting Act of 1986 applies only to its South Central Correctional Facility, not the Whiteville Correctional Facility. Furthermore, the statutory scheme and the statutory language we are called upon to interpret in this case are different from those above.

Looking to the language of the statutory scheme at issue in this case, we find nothing to signal a legislative intent that "a facility operated by [TDOC]," as used in Tenn. Code Ann. § 41-21-803, includes a correctional facility operated by a private corporation. The natural and ordinary meaning of "a facility operated by [TDOC]" in this context does not encompass a facility operated by a private corporate entity. To read it so would require a forced interpretation, which we must avoid. *Baker v. State*, 417 S.W.3d at 433; *Knox Cnty. ex rel. Envtl. Termite & Pest Control, Inc. v. Arrow Exterminators, Inc.*, 350 S.W.3d at 524; *Eastman Chem. Co. v. Johnson*, 151 S.W.3d at 507.

Moreover, the 2001 amendment to the statutory scheme, particularly the change of the definition of "inmate," reinforces our conclusion. If the statutory language "facility operated by [TDOC]" – language that was used in both Tenn. Code Ann. §§ 41-21-801(4) and 41-21-803 when the statutory scheme was enacted in 1996 – included those facilities operated by a private corporate entity, we do not believe the General Assembly would have amended Tenn. Code Ann. § 41-21-801(4) in 2001 to add the language "facility operated by a private corporation pursuant to a contract with the state or local government" to a definition of "inmate" that already included the language "facility operated by [TDOC]."

As we have often repeated, the courts may presume that the General Assembly is aware of its own prior enactments. *Lee Medical, Inc. v. Beecher*, 312 S.W.3d at 527. Furthermore, we have a duty to avoid construing a statute in such a way that would render any part of it superfluous or insignificant. *Baker v. State*, 417 S.W.3d at 439 (quoting *Tidwell v. Collins*, 522 S.W.2d 674, 676 (Tenn. 1975)).

Another rule of statutory construction is that "the expression of one thing implies the exclusion of all things not mentioned." *State v. Lane*, 254 S.W.3d 349, 353 (Tenn. 2008) (quoting *State v. Adler*, 92 S.W.3d 397, 400 (Tenn. 2002)). Despite the broad definition of "inmate" in Tenn. Code Ann. § 41-21-801(4), the language of Tenn. Code Ann. § 41-21-803 continues to be limited to actions filed by inmates housed "in a facility operated by [TDOC]." The General Assembly has not broadened Tenn. Code Ann. § 41-21-803 in the same way that it has broadened Tenn. Code Ann. § 41-21-801(4). Therefore, the omission of privately operated facilities from Tenn. Code Ann. § 41-21-803 supports a conclusion that the General Assembly intended to continue to limit the application of Tenn. Code Ann. § 41-21-803 to facilities operated by TDOC.

In light of these principles of statutory construction, we cannot interpret the language "facility operated by [TDOC]" – as used in Tenn. Code Ann. § 41-21-803 and unchanged since 1996 – to include a facility operated by a private corporate entity. We do not believe this language itself supports such a reading.

**D.**

Our inquiry is not at an end because we must still consider the impact of the 2001 change in the definition of "inmate" on the scope of Tenn. Code Ann. § 41-21-803. As previously mentioned, the definition of "inmate" was amended in 2001. Although we have concluded that the language "facility operated by [TDOC]" – as used in Tenn. Code Ann. § 41-21-803 and unchanged since 1996 – does not itself refer to a privately operated correctional facility, we must still consider the significance of the 2001 change in the definition of "inmate" with respect to the venue provision in which the word appears.

Before the 2001 amendment, "inmate" meant "a person housed in a facility operated by [TDOC] or housed in a county jail." Tenn. Code Ann. § 41-21-801(4). Thus, the statutory scheme as a whole recognized that the inmates to which it applied could be housed in multiple types of facilities. However, the language of the venue provision limited its application to inmates of only one variety – those housed in a facility operated by TDOC at the time their action accrued. Tenn. Code Ann. § 41-21-803. In other words, as originally enacted, the statutory scheme, taken as a whole, reflected a broader definition of inmate than those to whom the narrower venue provision applied. We do not view the 2001 amendment to the definition of "inmate" as anything more than a continued reflection of that distinction. The new "inmate" language from the 2001 amendment does not suggest to us any intended alteration of the operative part of the venue provision – that inmates housed in a facility operated by TDOC at the time their action accrued must bring suit in the county where the facility is located.

We note also that the legislative history of the statutory scheme does not convince us otherwise. The venue provision was never mentioned during the legislative discussion in 1996, nor was there any mention of CCA or privately operated correctional facilities. The discussion was for the most part phrased in general terms, characterizing the proposed legislation as specifying procedures and authorizing penalties for indigent prisoners who file frivolous and malicious lawsuits, in an effort to disincentivize such lawsuits.[18] The legislation was touted as a means to reduce the legal costs incurred by the State due to such lawsuits.[19]

---

[18] *See* Debate on S.B. 2627 Before the Senate, 99th Gen. Assemb. (Apr. 24, 1996) (statement of Sen. Joe M. Haynes); Debate on H.B. 2781 Before the House, 99th Gen. Assemb. (Mar. 14, 1996) (statement of Rep. Randy S. Rinks); Hearing on S.B. 2627 Before the Senate Comm. on State & Local Gov't, 99th Gen. Assemb. (Feb. 20, 1996) (statement of Sen. Joe M. Haynes).

[19] *See* Debate on H.B. 2781 Before the House, 99th Gen. Assemb. (Mar. 14, 1996) (statement of Rep. Randy S. Rinks); Hearing on H.B. 2781 Before the House Judiciary Comm., 99th Gen. Assemb. (Mar. 6,
(continued...)

The venue provision was never specifically mentioned during the legislative discussion in 2001, nor was there any mention of CCA or privately operated correctional facilities. The legislation was characterized in general terms as an attempt to control the "onslaught" of "recreational" prisoner litigation.[20] There were passing references to such litigation clogging "the local court," presumably meaning the Davidson County trial courts because Davidson County Circuit Court Judge Walter Kurtz testified before the House Judiciary Committee in favor of the legislation.[21] However, there was no mention of the definitional change to "inmate" in Tenn. Code Ann. § 41-21-801(4), and hence no indication that the change was intended to localize venue in the context of privately operated correctional facilities. Thus, we conclude that the legislative history of the 1996 and 2001 acts lends no support to the proposition that Tenn. Code Ann. § 41-21-803 localizes venue for actions that accrued while an inmate was housed in a correctional facility operated by a private corporation pursuant to a contract with the state or local government.

In this case, the trial court transferred Mr. Womack's complaint based on Tenn. Code Ann. § 41-21-803 and *Hayes v. State*. We have determined that Tenn. Code Ann. § 41-21-803 is not applicable to a lawsuit, like Mr. Womack's, that accrued while the inmate was housed in a correctional facility operated by a private corporation. To the extent that *Hayes v. State* or any other opinion[22] is inconsistent with our holding today, they are overruled.

**E.**

As a final matter, we note that CCA urges this Court to affirm the transfer of Mr. Womack's case to Hardeman County on the basis of the doctrine of forum non conveniens.

---

[19](...continued) 1996) (statement of Rep. Randy S. Rinks); Hearing on S.B. 2627 Before the Senate Comm. on State & Local Gov't, 99th Gen. Assemb. (Feb. 20, 1996) (statement of Sen. Joe M. Haynes).

[20]*See* Hearing on H.B. 816 Before the House Calendar & Rules Comm., 102d Gen. Assemb. (Mar. 29, 2001) (statement of Rep. Bobby W. Sands); Hearing on S.B. 1099 Before the Senate Judiciary Comm., 102d Gen. Assemb. (Mar. 6, 2001) (statement of Sen. Joe M. Haynes).

[21]*See* Hearing on H.B. 816 Before the House Judiciary Comm., 102d Gen. Assemb. (Mar. 21, 2001) (statements of Rep. Bobby W. Sands and Hon. Walter C. Kurtz); Hearing on S.B. 1099 Before the Senate Judiciary Comm., 102d Gen. Assemb. (Mar. 6, 2001) (statement of Sen. Joe M. Haynes).

[22]Among the other cases previously holding Tenn. Code Ann. § 41-21-803 applicable to a lawsuit that accrued while an inmate was housed in a correctional facility operated by a private corporation are *Clark v. South Central Correctional Facility*, 2007 WL 2093693, at *3; *Jones v. Tennessee Department of Correction*, 2007 WL 1241341, at *1; *Hicks v. Campbell*, 2003 WL 22438441, at *1 n.3; *Lewis v. Tennessee Department of Correction*, 2003 WL 21171495, at *1 n.4.

-16-

The record on appeal consists of little more than Mr. Womack's complaint, CCA's motion to dismiss, and Mr. Womack's responses. It is wholly insufficient to evaluate CCA's argument in this regard, especially given the discretion afforded the trial court and the variety of factors subject to consideration. *See Zurick v. Inman*, 221 Tenn. 393, 403-04, 426 S.W.2d 767, 772 (1968); *Luna v. Sherwood*, 208 S.W.3d 403, 406 (Tenn. Ct. App. 2006), *perm. app. denied* (Tenn. Oct. 30, 2006). Moreover, the trial court did not decide CCA's motion on the basis of forum non conveniens. We therefore decline to address whether Mr. Womack's complaint should be transferred to Hardeman County on the basis of forum non conveniens.

## IV.

We have determined that Tenn. Code Ann. § 41-21-803 does not specify the venue for Mr. Womack's lawsuit, because his claim accrued while he was housed in the privately operated Whiteville Correctional Facility. Accordingly, we reverse the judgments of the Court of Appeals and the trial court transferring Mr. Womack's case to Hardeman County on the basis of Tenn. Code Ann. § 41-21-803. We remand the case to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal to Corrections Corporation of America and its surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUSTICE