IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 8, 2025 Session

## HOWARD JEFFERSON ATKINS v. TENNESSEE DEPARTMENT OF CORRECTION ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 22-0574-IV        Russell T. Perkins, Chancellor**

———————————————————

**No. M2024-01543-COA-R3-CV**

———————————————————

This is an action for declaratory judgment filed by an inmate to correct his sentence expiration date. The inmate was sentenced to life in prison for first-degree murder, and his sentence was governed by the release eligibility provision in Tennessee Code Annotated § 40-35-501(h)(1). The State agreed that § 40-35-501(h)(1) entitled the inmate to apply credits for good behavior and program performance to reduce his parole eligibility date, but the parties disagreed on whether the inmate could also apply his credits to reduce the length of his sentence, to advance his sentence expiration date. The trial court entered judgment for the inmate. The court reasoned that the sentence credit statute, Tennessee Code Annotated § 41-21-236, applies to all inmates unless otherwise specified and that the General Assembly had not specifically prohibited the application of credits to the expiration date of life sentences for first-degree murder. We agree with the trial court and affirm its judgment.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and ANDY D. BENNETT, J., joined.

Jonathan Skrmetti, Attorney General and Reporter; J. Matthew Rice, Solicitor General; and John H. Bledsoe, Deputy Attorney General, for the appellants, Jonathan Skrmetti, Attorney General and Reporter, and the Tennessee Department of Correction.

David R. Esquivel, Nashville, Tennessee, for the appellee, Howard Jefferson Atkins.

# OPINION

## FACTS AND PROCEDURAL HISTORY

In November 2000, Howard Jefferson Atkins was sentenced to life in prison for an offense he committed when he was seventeen years old. Over the next 20 years, Mr. Atkins earned numerous credits for good behavior and program performance under Tennessee Code Annotated § 41-21-236.

At the time of his offense, Mr. Atkins's sentence was subject to the language now codified in Tennessee Code Annotated § 40-35-501(h)(2),[1] which says that persons committing first degree murder on or after July 1, 1995, and sentenced to life in prison are ineligible for parole but may reduce the length of their sentence by up to 15% by earning sentence reduction credits under Tennessee Code Annotated § 41-21-236.

Over the next twenty years, Mr. Atkins earned enough credits to reduce his sentence length by 15%; thus, his sentence expiration date was September 23, 2051.[2] But instead of a "sentence expiration date," the Tennessee Offender Management Information System ("TOMIS") gave Mr. Atkins a parole "release eligibility date." Thus, in April 2022, Mr. Atkins commenced this action for declaratory judgment to correct the error.

While the action was pending, the Tennessee Supreme Court released its decision in *State v. Booker*, 656 S.W.3d 49 (Tenn. 2022). The Court held that juveniles sentenced to life in prison for first-degree murder must be given a parole hearing per the release eligibility provision in effect from November 1, 1989, to July 1, 1995, and codified at Tennessee Code Annotated § 40-35-501(h)(1). *Id.* at 66. Under § 40-35-501(h)(1), persons committing first-degree murder and sentenced to life in prison are eligible for parole after serving 36 years and may reduce their parole eligibility release date to 25 years by applying credits earned under § 41-21-236.

After the opinion in *Booker* was released, the parties agreed that Mr. Atkins would be eligible for parole after serving 25 years due to the number of credits he earned under § 41-21-236. But the parties disagreed on whether Mr. Atkins's credits would also reduce his sentence expiration date. After a hearing, the trial court entered judgment for Mr. Atkins. The trial court found that § 41-21-236 allows for the application of sentence credits

---

[1] For ease of reference, we have cited to the sentencing statutes as currently codified. The substance of these statutes has not changed in any material way since the date of Mr. Atkins's offense.

[2] When he was sentenced, Mr. Atkins's sentence effective date was listed as December 7, 2000. During the pendency of this action, Mr. Atkins filed a successful administrative appeal for recalculation of his pre-trial jail credits. As a result, Mr. Atkins's sentence effective date was changed to September 23, 2000, which is not in dispute.

to an inmate's sentence expiration date and applies to all inmates unless specifically stated otherwise. Because the Tennessee General Assembly had not specifically prohibited the application of credits to life sentence expiration dates governed by § 40-35-501(h)(1), the court held that Mr. Atkins was entitled to reduction of his sentence.

This appeal followed.

## ISSUES

The State raises one issue on appeal, which we restate as whether an inmate sentenced to life in prison for first degree murder committed between July 1, 1989, and July 1, 1995, may apply time credits earned under Tennessee Code Annotated § 41-21-239 to reduce the expiration date of his or her sentence.

## STANDARD OF REVIEW

"[I]ssues of statutory construction are questions of law." *Ki v. State*, 78 S.W.3d 876, 879 (Tenn. 2002) (quoting *Stewart v. State*, 33 S.W.3d 785, 791 (Tenn. 2000)). We review questions of law de novo with no presumption of correctness. *Id*. (citing *Walker v. Bd. of Pro. Resp. of Supreme Ct. of Tennessee*, 38 S.W.3d 540, 544 (Tenn. 2001); *Reeves v. Granite State Ins. Co.*, 36 S.W.3d 58, 60 (Tenn. 2001)).

## ANALYSIS

The State argues that the trial court erred for two reasons. First, the State argues that sentence reduction credits cannot reduce the length of a life sentence because § 41-21-236(b) says that credits "shall affect release eligibility and sentence expiration dates in the same manner as time credits affected parole eligibility and sentence expiration dates prior to September 1, 1980." According to the State, sentence credits never reduced the length of a life sentence before that date. Second, the State asserts that release on parole is the only type of early release allowed by § 40-35-501(h)(1).

When interpreting a statute, "[o]ur analysis naturally begins with the words used in the statute," *Womack v. Corr. Corp. of Am.*, 448 S.W.3d 362, 366 (Tenn. 2014), and we must interpret those words under their "natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose," *id.* (quoting *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012)).

### I. SECTION 41-21-236

Tennessee Code Annotated § 41-21-236 governs the award of "inmate sentence reduction credits" for good behavior and satisfactory performance in educational and/or vocational training programs. *See* Tenn. Code Ann. § 41-21-236(a)(1)–(2). Inmates may earn between one and sixteen days for each month served, and the credits "shall be used to

reduce the sentence imposed."[3] *Id*. 41-21-236(a)(2)(A). There is no language in § 41-21-236 that expressly limits or prevents the award of sentence reduction credits to inmates sentenced to life in prison for first-degree murder.[4]

Still, the State contends that time credits cannot reduce the length of a life sentence because § 41-21-236(b)(2) says that credits "shall affect" expiration dates "in the same manner" as "prior to September 1, 1980." Tenn. Code Ann. § 41-21-236. And according to the State, time credits did not apply to life sentence expiration dates before that date. Mr. Atkins asserts that § 41-21-236(b) is a "definitional provision" that simply clarifies that time credits awarded under the current statutory sentencing scheme have the same effect as time credits awarded under earlier sentencing schemes. We agree with Mr. Atkins.

Section 41-21-236(b) provides:

> (b) (1) The allowances that can be awarded pursuant to this section shall be referred to as inmate sentence reduction credits.
>
> (2) For sentences of less than (2) years or for offenses committed before July 1, 2024, sentence reduction credits shall affect release eligibility and sentence expiration dates in the same manner as time credits affected parole eligibility and sentence expiration dates prior to September 1, 1980.

Tenn. Code Ann. § 41-21-236.

Before September 1, 1980, inmates could earn three types of credits: "good time," "honor time," and "incentive." *See Byrd v. Bradley*, 913 S.W.2d 181, 184 (Tenn. Ct. App. 1995); *Jones v. Reynolds*, No. 01A01-9510-CH-00484, 1997 WL 367661, at *3–4 (Tenn. Ct. App. July 2, 1997). Good time credits date back to 1870, when prison superintendents had to keep a "good time account" to record the conduct of inmates. *See* Act of Feb. 5, 1870, ch. 59, § 7, 1869–1870 Tenn. Pub. Acts 74, 76. All inmates who demeaned themselves "uprightly" would have their sentences reduced by "one month for the first year, two months for the second year, three months for the third year, and three months for each subsequent year, to the tenth year inclusive, and four months for each remaining year of the time of imprisonment." *See id*. Starting in 1915, inmates placed in "honor grade" could reduce their sentences by an additional "two months for each year of his term of imprisonment." *See* Act of May 17, 1915, ch. 163, § 2, 1915 Tenn. Pub. Acts 452, 452–53.

---

[3] Time credits do not apply to the expiration dates for offenses committed after July 1, 2024. *See* Tenn. Code Ann. § 41-21-236(a)(2)(A)(i)(*a*).

[4] "The determinate sentence for a life sentence is sixty years, as set for in Tennessee Code Annotated section 40-35-501(h)(1)." *Brown v. Jordan*, 563 S.W.3d 196, 200 (Tenn. 2018).

And beginning in 1972, inmates who participated in academic and vocational classes or performed "above average" in their job placement could reduce their sentences by an additional 30 days during the first year, 60 days during the second through tenth year, and 90 days during the eleventh and subsequent years. *See* Act of April 4, 1972, ch. 705, § 1, 1972 Tenn. Pub. Acts 758, 758–59.

"Good time," "honor grade," and "incentive" credits were available to all inmates until 1979, when the General Assembly passed the Class X Felonies Act of 1979. *See* ch. 318, § 2, 1979 Tenn. Pub. Acts 696, 696–97. The Act stated that sentences for Class X felonies would "not be subject to reduction for good, honor or incentive or other sentence credit of any sort." *Id*. Class X felonies included, *inter alia*, first- and second-degree murder; first degree criminal sexual conduct; aggravated kidnapping; robbery with deadly weapon; and aggravated arson. *Id*.

In 1980, the General Assembly consolidated "good time," "honor grade," and "incentive" credits into two new categories. "Good time" and "honor time" credits were replaced with "good conduct sentence credits," and "incentive" credits were replaced with "prisoner performance credits." *See* Act of April 17, 1980, ch. 805, § 1, 1980 Tenn. Pub. Acts 942, 942–46. Significantly, the 1980 Act contained language substantially similar to that now codified in § 41-21-236(b)(2):

> SECTION 1. (a) Prisoners admitted after July 1, 1981, shall accrue good conduct time . . .
>
> .    .    .
>
> **(c) The allowances which can be earned pursuant to this section may be referred to as good conduct sentence credits and shall affect parole eligibility and sentence expiration dates in the same manner as good and honor time credits affected such dates prior to the effective date of this statute**.
>
> .    .    .
>
> SECTION 2. (a) Those persons committed to the custody of the Department of Correction shall be assigned to work and/or educational and/or vocational training programs, when positions in such programs are available. Each inmate who performs within a program shall earn time credits toward the sentence imposed . . .
>
> .    .    .
>
> **(b) The allowances which can be earned pursuant to this section shall be referred to as prisoner performance sentence credits and shall affect parole eligibility and sentence expiration dates**

- 5 -

**in the same manner as incentive time credits affected such dates prior to the effective date of this statute**.

Act of April 17, 1980, ch. 805, §§ 1 and 2, 1980 Tenn. Pub. Acts 942, 944–46 (emphasis added).

According to the State's proposed interpretation of § 41-21-236(b), the language emphasized above would mean that "good conduct" and "prisoner performance" credits earned after 1980 would apply to the same offenses and have the same effect as before 1980. The immediate problem with this construction is that the pre-1980 "good time" credits were calculated differently from the "honor grade" credits. Yet the 1980 amendment combines these credits into one. This raises the question of what benefit "good conduct sentence credits" would have provided: Would they be granted on a graduated schedule like credits for "good time" in 1870? Or would the award be a flat two months for each year as provided to "honor grade" inmates in 1972? The answer is neither. Instead, the 1980 Act stated that "good conduct" credits would accrue "in the following manner:"

> (1) Class I prisoner shall receive thirty (30) days credit for each month of the sentence served;
>
> (2) Class II prisoner shall receive twenty-two (22) days credit for each month of the sentence served;
>
> (3) Class III prisoner shall receive ten (10) days credit for each month of the sentence served; and
>
> (4) Class IV prisoner shall receive no credit on his sentence and shall serve his sentence day for day.
>
> Each prisoner shall be designated as a Class III prisoner for the first calendar year of his sentence commencing with his sentence effective date. In the second calendar year of a prisoner's sentence, a prisoner shall be classified as a Class II prisoner. From the eleventh calendar year of a prisoners' sentence through the remainder of his sentence, a prisoner shall be classified as a Class I prisoner.

Act of April 17, 1980, ch. 805, § 1, 1980 Tenn. Pub. Acts 942, 943.

Similarly, the Act of 1980 awarded "prisoner performance credits" in a different manner than the manner in which "incentive" credits had been awarded. As explained, before 1980, inmates could earn 30 days of incentive credits during the first year, 60 days during the second through tenth year, and 90 days during the eleventh and subsequent years. *See* Act of April 4, 1972, ch. 705, § 1, 1972 Tenn. Pub. Acts 758, 759. The 1980 Act allowed inmates to earn "between one (1) day and fifteen (15) days a month" of prisoner performance credits "in accordance with the criteria established by the department

depending upon the program to which he [was] assigned." Act of April 17, 1980, ch. 805, § 2, 1980 Tenn. Pub. Acts 942, 945.

Had the General Assembly intended for post-1980 credits to apply exactly as before, there would have been no need to specify how the credits applied after 1980.

A definitional provision like that in § 41-21-236(b)(2) was also included in the Comprehensive Correction Improvement Act of 1985, which further consolidated "good conduct" and "prisoner performance" credits into one category, "prisoner sentence reduction credits":

> SECTION 12. . . .
>
> (a) (1) Those persons committed to the custody of the Department of Correction shall he assigned to work and/or educational and/or vocational training programs, when positions in such programs are available.
>
> (2) Each inmate who exhibits **good institutional behavior and/or who exhibits satisfactory performance within a program** may be awarded time credits toward the sentence imposed . . .
>
> .    .    .
>
> (b) The allowances which can be awarded pursuant to this section shall be referred to as **prisoner sentence reduction credits** and shall affect release eligibility and sentence expiration dates in the same manner as **time credits** affected parole eligibility and sentence expiration dates **prior to September 1, 1980**.

Comprehensive Correction Improvement Act of 1985, ch. 5, § 12, 1985 Tenn. Pub. Acts (1st Ext. Sess.) 22, 24 (emphasis added). Significantly, the 1985 Act made prisoner sentence reduction credits generally available to all inmates, including inmates who had committed Class X felonies. *Id*. at 25. Again, had the General Assembly intended for the new prisoner sentence reduction credits to apply in the exact same way that good conduct and prisoner performance credits applied before 1980, there would have been no need to specify who was eligible.

Based on the foregoing, we conclude that § 41-21-236(b)(2) clarifies that "inmate sentence reduction credits" have the same general effect on sentence expiration dates that past credits had, i.e., a reduction. For this reason, we conclude that § 41-21-236(b)(2) does not prevent application of sentence reduction credits to Mr. Atkins's sentence expiration date.

## II. SECTION 40-35-501

The State also argues that Tennessee Code Annotated § 40-35-501(h)(1) prevents the application of sentence credits to reduce Mr. Atkins's sentence. Section 40-35-501(h)(1) provides:

> Release eligibility for a defendant committing the offense of first degree murder on or after November 1, 1989, but prior to July 1, 1995[5], who receives a sentence of imprisonment for life occurs after service of sixty percent (60%) of sixty (60) years less sentence credits earned and retained by the defendant, but in no event shall a defendant sentenced to imprisonment for life be eligible for parole until the defendant has served a minimum of twenty-five (25) full calendar years of the sentence, notwithstanding the governor's power to reduce prison overcrowding pursuant to title 41, chapter 1, part 5, any sentence reduction credits authorized by § 41-21-236, or any other provision of law relating to sentence credits.

Tenn. Code Ann. § 40-35-501(h)(1). "The release eligibility date provided for in this section is the earliest date an inmate convicted of a felony is eligible for parole." *Id*. § 40-35-501(n).

The State's argument is based on the principle of *expressio unius est exclusio alterius*, which means that "the expression of one thing implies the exclusion of others." *Effler v. Purdue Pharma L.P.*, 614 S.W.3d 681, 689 (Tenn. 2020) (quoting *Rich v. Tennessee Bd. of Med. Examiners*, 350 S.W.3d 919, 927 (Tenn. 2011)). The State reasons that sentence credits cannot be used to reduce Mr. Atkins's sentence expiration date because "the only type of release that the statute offers" is release on parole.

We find the principle of *expression unius* is not applicable here. Under *expressio unius*, "[o]missions are significant when statutes are express in certain categories but not in others." *Richards v. Vanderbilt Univ. Med. Ctr.*, 706 S.W.3d 319, 324 (Tenn. 2025) (quoting *Carver v. Citizen Utilities Co.*, 954 S.W.2d 34, 35 (Tenn. 1997)). For example, in *Effler v. Purdue Pharma L.P.*, 614 S.W.3d 681 (Tenn. 2020), the Tennessee Supreme Court considered whether district attorneys had standing to sue under the Drug Dealer Liability Act. *Id*. at 684. The statute listed the categories of persons who could file suit, and district attorneys were not on that list. *Id*. at 688. Applying the principle of *expressio unius*, the Court held that "the absence of the District Attorneys from an enumerated list of parties who may bring a claim under the Act shows that the Legislature did not intend for the District Attorneys to have standing to sue under the Act." *Id*. at 689.

---

[5] Although Mr. Atkins committed his offense after July 1, 1995, his sentence is subject to § 40-35-501(h)(1) because he was a juvenile at the time. *See Booker*, 656 S.W.3d at 66.

Here, § 40-35-501(h)(1) identifies one category of defendants to which it applies: those who committed the offense of first-degree murder on or after November 1, 1989, but before July 1, 1995, and who received a life sentence. These defendants are ineligible for release on parole until serving 25 to 36 years, depending on sentence credits earned and retained. Application of *exressio unius* simply leads to the conclusion that the limits on release eligibility in § 40-35-501(h)(1) apply to only the identified category of defendants.

Although "[o]ur General Assembly has designated a few offenses for which neither parole nor sentence reduction credits are available," *Davis v. State*, 313 S.W.3d 751, 758 (Tenn. 2010), first-degree murder is not one of them, *see* Tenn. Code Ann. § 39-13-523(b) (requiring child sexual predators, aggravated rapists, multiple rapists, and child rapists to "serve the entire sentence imposed by the court undiminished by any sentence reduction credits"); *see also* Tenn. Code Ann. § 40-35-501(i)(3) ("Nothing in this subsection (i) shall be construed as affecting, amending or altering § 39-13-523 . . . ."). As Mr. Atkins argues, if the General Assembly intended to exempt life sentences from the generally applicable sentence reduction statute, it could have done so expressly. *See Davis*, 313 S.W.3d at 757 ("[T]he legislature's failure to limit the use of offender classification and release eligibility as plea bargaining tools evinced the legislature's intent to permit the practice." (quoting *McConnell v. State*, 12 S.W.3d 795, 798 (Tenn. 2000))).

Still, the State maintains that the Tennessee Supreme Court's decisions in *Brown v Jordan*, 563 S.W.3d 196 (Tenn. 1996) and *State v. Booker*, 656 S.W.3d 49 (Tenn. 2022) confirm that a defendant sentenced to life imprisonment for first-degree murder and subject to § 40-35-501(h)(1) has no right to use time credits to reduce his or her sentence expiration date. We disagree. Neither *Brown* nor *Booker* addressed the application of credits to the sentence expiration dates of inmates whose sentences are governed by § 40-35-501(h)(1).

In *Brown*, the Court clarified that defendants subject to § 40-35-501(i)—now codified at § 40-35-501(h)(2)—"may be released after service of at least fifty-one years if the defendant earns the maximum allowable sentence reduction credits." 563 S.W.3d at 202. And in *Booker*, the Court held that application of § 40-35-501(h)(2) to juvenile offenders is unconstitutional. *See* 656 S.W.3d at 68 (plurality) and 77 (J., Kirby, concurring). To fix the defect, the Court applied § 40-35-501(h)(1), under which juvenile offenders "remain sentenced to a sixty-year term" but are "eligible for, although not guaranteed, supervised release on parole after serving between twenty-five and thirty-six years." *Id*. The Court did not, however, discuss whether the sixty-year term would still be subject to the generally applicable sentence reduction statute in § 40-21-236.

Finally, the State argues that allowing a defendant convicted of first-degree murder and sentenced to life in prison to apply time credits to his sentence expiration date could result in the expiration of the defendant's sentence before his release eligibility date. This is incorrect. Under § 40-35-501(h)(2), an inmate is eligible for parole after serving between 25 and 36 years, depending on credits earned and retained. Under § 41-21-236(a)(2)(A)(ii), an inmate can earn up to 16 days of sentence reduction credits for each month served. Thus,

a person sentenced to life in prison with a determinate sentence of 60 years could reduce his or her sentence expiration date by about 30% or 20 years.

For these reasons, we agree with the trial court's declaration that Tennessee Code Annotated § 41-21-236 applies to inmates sentenced to life in prison for first-degree murder whose sentences are subject to Tennessee Code Annotated § 40-35-501(h)(1) and affirm its judgment requiring the State to apply Mr. Atkins's sentence credits to his sentence expiration date.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellants.

_____
FRANK G. CLEMENT JR., P.J., M.S.