IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
June 2, 2016 Session

**REGINALD DION HUGHES v. TENNESSEE BOARD OF PROBATION
AND PAROLE**

**Appeal by Permission from the Court of Appeals
Chancery Court for Davidson County
No. 14884III     Ellen H. Lyle, Chancellor**
———————————————————

**No. M2015-00722-SC-R11-CV
Filed March 23, 2017**
———————————————————


SHARON G. LEE, J., dissenting.

The Court bars Mr. Hughes's access to the courthouse based on its interpretation of Tennessee Code Annotated sections 41-21-801 to -818, an act that adopted procedures and penalties for prison inmates who file frivolous or malicious lawsuits. As noted by the Court, the purpose of this act was to "offset the tide of frivolous inmate litigation filtering through the court system." Under this act, a trial court may dismiss an inmate's claim upon a finding that the claim is frivolous or malicious or if the inmate has previously filed three or more claims found to be frivolous or malicious. The specific section at issue is section 41-21-812(a), which provides that "on notice of assessment of any fees, taxes, costs and expenses *under this part*, a clerk of a court may not accept for filing another claim by the same inmate until prior fees, taxes, costs and other expenses are paid in full." *Id.* (emphasis added).[1]

When Mr. Hughes filed his petition of certiorari, he owed no fees, taxes, costs, or other expenses assessed under any part of the act. Instead, he owed $49.50 in court costs from a decades-old divorce case that was filed before the act was adopted. These unpaid costs do not justify shutting the courthouse door and barring entry to Mr. Hughes, an indigent inmate. The divorce case was not frivolous, malicious, or the sort of inmate litigation that the General Assembly intended to curb when it adopted Tennessee Code

———

[1] Tennessee Code Annotated section 41-21-812(b) is not at issue. It allows an inmate who owes costs and fees "to file a claim for injunctive relief seeking to enjoin an act or failure to act that creates a substantial threat of irreparable injury or serious physical harm to the inmate." *Id.*

Annotated sections 41-21-801 to -818. Because Tennessee Code Annotated section 41-21-812(a) is not applicable, there is no reason for the Court to determine its constitutionality. *See State v. Taylor*, 70 S.W.3d 717, 720–21 (Tenn. 2002).

In 1995, Mr. Hughes filed a divorce complaint in the Lauderdale County Chancery Court. In 1998, the trial court dismissed the divorce case because Mr. Hughes, who was incarcerated, could not appear in court. The order of dismissal assessed costs against Mr. Hughes but did not state the amount of the costs. Mr. Hughes claims he did not know he owed court costs. The record does not indicate that the clerk sent Mr. Hughes a bill of costs or sent the judgment to the Department of Correction for collection of costs as required by Tennessee Code Annotated section 41-21-808(b).[2] Had the clerk followed the provisions of the act, presumably the court costs would have been paid in full from Mr. Hughes's inmate trust account long before he filed this action.

In 2012, Mr. Hughes filed a timely petition of certiorari from the Board's denial of parole. The Board waited three years to seek dismissal based on its allegation that Mr. Hughes owed $258.85 in unpaid court costs. This delay prevented Mr. Hughes from paying the outstanding costs and refiling his petition of certiorari within sixty days from the Board's final order as required by Tennessee Code Annotated section 27-9-102.[3]

To make matters worse, in dismissing Mr. Hughes's case against the Board, the trial court and the Court of Appeals relied on the Board's incorrect assertion that Mr. Hughes owed $258.85 in court costs from two previous cases. Mr. Hughes did not owe $258.85 in costs; he owed only $49.50 in costs from his 1995 divorce case. The remainder of the alleged costs, $209.35, was from a suit he had filed against the Board that was dismissed. The judgment dismissing the case assessed no costs against him.

---

[2] Tennessee Code Annotated section 41-21-808(b) provides:

> The clerk of the court shall mail a copy of the court's judgment taxing costs against the inmate to the department or county jail, as appropriate. On receipt of a copy of the judgment, the department or county jail shall withdraw funds from the inmate's trust account in the amounts provided by § 41-21-807(b) for the collection of filing fees and shall forward the collected funds to the clerk of the court until the costs are paid in full or the inmate is released from confinement.

*Id.*

[3] In its motion to dismiss, the Board relied on an Affidavit of Sandra Burnham, Clerk and Master of the Lauderdale County Chancery Court, to support its assertion that Mr. Hughes owed $258.85 in costs. The Board failed to attach the affidavit to its motion.

Mr. Hughes did nothing wrong when he filed for divorce in 1995. The divorce case was not frivolous or malicious. He had a constitutional right to file his divorce action. *See Boddie v. Connecticut*, 401 U.S. 371, 377 (1971); *see also Christopher v. Harbury*, 536 U.S. 403, 413 (2002). Choices about marriage and family life are among associational rights "of basic importance in our society," rights protected by the Fourteenth Amendment against "unwarranted usurpation, disregard, or disrespect" by the state. *M.L.B. v. S.L.J.*, 519 U.S. 102, 116 (1996) (quoting *Boddie*, 401 U.S. at 376). Mr. Hughes had no choice but to use the court system to have his marriage dissolved. *See Boddie*, 401 U.S. at 376. This Court has previously recognized our "affirmative constitutional duty under both the United States Constitution and the Constitution of Tennessee to open the courts to bona fide indigents seeking, in good faith, the judicial dissolution of their marriages." *Dungan v. Dungan*, 579 S.W.2d 183, 185 (Tenn. 1979).

In 1996, a year after Mr. Hughes filed for divorce, the General Assembly enacted legislation, Tennessee Code Annotated sections 41-21-801 to -818, to curb frivolous prisoner litigation. *Womack v. Corr. Corp. of Am.*, 448 S.W.3d 362, 367 & n.9 (Tenn. 2014) (citing act of April 24, 1996, ch. 913, 1996 Tenn. Pub. Acts 569; *Hawkins v. Tenn. Dep't of Corr.*, 127 S.W.3d 749, 754 (Tenn. Ct. App. 2002)). In Tennessee and other jurisdictions, inmates could file lawsuits without paying filing fees, costs, and litigation taxes by simply filing an affidavit of indigency. Inmates frequently used this procedure to file frivolous lawsuits that state officials had to defend. Mallory Yontz, *Amending the Prison Litigation Reform Act: Imposing Financial Burdens on Prisoners over Tax Payers*, 44 J. Marshall L. Rev. 1061, 1070 (2011). With unfettered, free access to the courts, inmates had no disincentives to deter them from filing frivolous, meritless, and often nonsensical lawsuits against the state.[4] Tennessee, a number of other states, and the federal government passed legislation to reduce the number of frivolous inmate lawsuits.[5]

---

[4] The classic example of a frivolous prisoner claim was brought by an inmate who contended he was being treated unconstitutionally because he received a jar of crunchy peanut butter and not the creamy kind that he had ordered from the prison canteen. Cindy Chen, *The Prison Litigation Reform Act of 1995: Doing Away with More Than Just Crunchy Peanut Butter*, 78 St. John's L. Rev. 203, 206, & n.22 (2004) (citing 141 Cong. Rec. S14413 (daily ed. Sept. 27, 1995) (statement of Sen. Bob Dole) (including the peanut butter case among the list of frivolous prisoner lawsuits that inundated the federal dockets and wasted legal resources)).

[5] *See* 28 U.S.C. § 1915(e)(2)(B)(i); Ala. Code § 14-15-4(d)(1)(a)–(b); Ark. Code Ann. §§ 16-68-605(2), 16-106-202(a)(2); Colo. Rev. Stat. § 13-17.5-102.3(2); Del. Code Ann. tit. 10, § 8803(b); Fla. Stat. § 57.085(6)(d), (8)(d); Idaho Code Ann. § 31-3220A(14)(b)–(c); Ind. Code § 34-58-1-2(a)(1); Iowa Code § 610A.2(1)(b); Ky. Rev. Stat. Ann. § 454.405(1); La. Rev. Stat. Ann. § 15:1186(C); Md. Code Ann., Cts. & Jud. Proc. § 5-1004(b)(1); Mass. Gen. Laws ch. 231, § 6F; Mich. Comp. Laws §§ 600.5505(2)(b), 600.5509(2)(a); Minn. Stat. § 563.02, subdiv. 3(a); Mo. Rev. Stat. §§ 506.375(2), 506.384(2); N.H. Rev. Stat. Ann. § 623-B:3(II); N.C. Gen. Stat. § 1-110(b); Ohio Rev. Code Ann. § 2969.24(A)(2); Okla. Stat. tit. 57, §§ 566(A)(2), 566.3(F)(2)(a); Or. Rev. Stat.

Tennessee's act applies only to a claim brought by an inmate in a general sessions or trial level court of record in which the inmate files an affidavit of inability to pay costs. Tenn. Code Ann. § 41-21-802. A "claim" is defined as any lawsuit or appeal filed by an inmate except a petition for post-conviction relief. *Id.* § 41-21-801(1). Key parts of the act are summarized below.

- An inmate who files a claim with an affidavit of inability to pay costs must also file a separate affidavit listing every lawsuit or claim previously filed by the inmate (without regard to whether the inmate was incarcerated when the claim or lawsuit was filed) and specify for each listed claim or lawsuit the operative facts for which relief was sought; the case name, number, and court in which the suit was filed; the legal theory on which the relief sought was based; the identification of each party named in the action; and the final result of the action, including whether the suit was dismissed as frivolous or malicious under this part or otherwise, and if so, the date of the final order. The affidavit must also include a certified copy of the inmate's current trust account statement. *Id.* § 41-21-805.

- A court may dismiss an inmate's claim, before or after the defendant is served with process, if the court finds that the allegation of poverty in the inmate's affidavit is false or the claim is frivolous or malicious. *Id.* § 41-21-804(a)(1)–(2). In determining whether a claim is frivolous or malicious, the court may consider whether the claim has a chance of success, has a basis in law and fact, and is substantially similar to a previous claim filed by the inmate arising from the same operative facts. *Id.* § 41-21-804(b)(1)–(3).

- An inmate who seeks to file a civil action or appeal a civil judgment without prepaying the filing fees or security for fees must file the previously described affidavit and submit a certified copy of the inmate's trust fund account statement for the six-month period before the filing of the complaint or notice of appeal. If an inmate files a civil action or an appeal in forma pauperis, the inmate must pay the full filing fee on a specified payment schedule. *Id.* § 41-21-807(a)–(b).

- An inmate is not prohibited from bringing a civil action or appealing a civil or criminal judgment because the inmate has no assets or means to pay the initial partial filing fee. *Id.* § 41-21-807(b)(4).

---

§ 30.647(2)(a); S.D. Codified Laws § 16-2-29.4; Tex. Civ. Prac. & Rem. Code Ann. § 14.003(a)(2); W. Va. Code § 25-1A-4(a); Wis. Stat. § 802.05(4)(b)(1)–(2).

• An inmate may not file or appeal a civil action or proceeding under this section if the inmate has, on three or more prior occasions, while incarcerated or detained in any facility, filed a state or federal court action that was dismissed because it was frivolous or malicious or failed to state a claim upon which relief may be granted, unless the inmate is in imminent danger of serious physical injury. *Id.* § 41-21-807(c).

• An inmate can lose good conduct sentence reduction credits by filing an action that is later dismissed as frivolous or malicious. *Id.* § 41-21-816(a).

• When a judgment is rendered against an inmate that includes payment of costs, the inmate must pay the full amount of costs ordered. *Id.* § 41-21-808(a). The court clerk is directed to mail a copy of the court's judgment taxing costs against the inmate to the Department of Correction or the county jail. On receipt of a copy of the judgment, the Department or county jail is authorized to withdraw the appropriate amount of funds from the inmate's trust account for the collection of filing fees and shall forward the collected funds to the clerk of the court until the costs are paid in full or the inmate is released from confinement. *Id.* § 41-21-808(b).

The section at issue here provides that a clerk of court, when "on notice of assessment of any fees, taxes, costs and expenses *under this part . . .* may not accept for filing another claim by the same inmate until prior fees, taxes, costs and other expenses are paid in full." *Id.* § 41-21-812(a) (emphasis added). This section does not apply to prevent an inmate with unpaid costs or expenses from filing a claim for injunctive relief regarding an act or failure to act that creates a substantial threat of irreparable injury or serious physical harm to the inmate. *Id.* § 41-21-812(b).

The language of section 41-21-812(a) leads to the conclusion that only unpaid fees and costs assessed *under this part* can authorize dismissal of a subsequently filed claim. The court costs from Mr. Hughes's divorce case were not assessed under the act. The legislative history of the act supports this conclusion because its overriding purpose was to reduce filings and streamline the disposition of frivolous or malicious lawsuits by inmates against the State. When Senator Joe Haynes, the Senate Sponsor of the bill, spoke before the Select Oversight Committee on Corrections, he explained that the bill

> specifies procedures and *authorizes penalties for indigent prison inmates who file frivolous and malicious lawsuits.* This bill would create disincentives for these inmates to file such lawsuits. . . . [W]e define the court process for dismissing the suits, provide a guideline and incentive for judges to declare these suits frivolous or malicious as early as possible in the court process. The requirement for inmates to file an affidavit, including a complete list of every lawsuit with the operative facts, the case [name],

number, and court in which the suit was filed, will assist judges in identifying the inmates who have a pattern of filing frivolous lawsuits. . . . It would further allow for the garnishment of inmates' trust accounts to pay court costs and a forfeiture of their sentence reduction credits in order to be deterrents to these lawsuits. *It would also reduce significantly, we hope, the annual legal costs incurred by the state due to these suits.*

*Hearing on S.B. 2627 Before the Select Oversight Comm. on Corr.*, 99th Gen. Assemb. (Tenn. 1996) (emphasis added) (statement of Sen. Joe Haynes, Bill Sponsor).

When presenting the bill to the Finance, Ways & Means Committee, Senator Haynes further explained, "This bill deals with frivolous lawsuits that are filed by prison inmates. It would permit the court to determine when an inmate has a history of previously filing frivolous or malicious lawsuits." *Hearing on S.B. 2627 Before the Finance, Ways & Means Comm.*, 99th Gen. Assemb. (Tenn. 1996) (statement of Sen. Joe Haynes, Bill Sponsor).

Senator Haynes explained to the full Senate:

*[W]e have a problem in this State of our prisoners filing frivolous lawsuits. And Senator Cole and I bring this bill to try to deal with that problem.* This would allow a general sessions court or a trial level court to dismiss a claim filed by an inmate who also files an affidavit of inability to pay related costs if the court were to find that the claim is frivolous or malicious, or that the allegation of poverty in the inmate's affidavit is false. . . . [T]hey must file a separate affidavit with a complete listing as to every lawsuit or claim previously filed by the inmate, whether incarcerated at the time or not, including the details of those lawsuits.

*Hearing on S.B. 2627 Before the Senate*, 99th Gen. Assemb., S. Sess. (Tenn. 1996) (emphasis added) (statement of Sen. Joe Haynes, Bill Sponsor).

Representative Randy Rinks, the sponsor of the companion House bill, stated to the House Judiciary Committee:

This bill . . . sets up some procedure for the courts *to authorize penalties for prison inmates who file frivolous lawsuits.* Over the past—last year as a matter of fact, I think *the state was out $400,000 in defending these frivolous lawsuits that dealt with, with dessert wasn't large enough, didn't have fried chicken on Friday, some of those kind of lawsuits that they're dealing with and we've had to defend. And basically this sets up some*

*procedures for the court in order to decide if they're frivolous lawsuits and then penalize prisoners basically for bringing those lawsuits.*

*Hearing on H.B. 2781 Before the House Judiciary Comm.*, 99th Gen. Assemb. (Tenn. 1996) (emphasis added) (statement of Rep. Randy Rinks, Bill Sponsor).

Before the vote on the bill in the House of Representatives, Representative Rinks explained:

This bill basically sets up procedures for the courts to *authorize penalties for prison inmates that file frivolous lawsuits. Basically last year alone we spent $400,000 of taxpayers' money for frivolous lawsuits that'd been filed by prison inmates.* This bill will take up to 20% of the inmates' trust accounts, will garnish those accounts, and pay the court costs, and also it'll forfeiture the sentence reduction credits.

*Hearing on H.B. 2781 Before the House of Representatives*, 99th Gen. Assemb., H. Sess. (Tenn. 1996) (emphasis added) (statement of Rep. Randy Rinks, Bill Sponsor).

This legislative history confirms that the act was intended to address the problem of costly, vexatious inmate lawsuits against the State. *See Williams v. Bell*, 37 S.W.3d 477, 480 (Tenn. Ct. App. 2000).[6] The statute does not target a divorce complaint that was filed before the statute's enactment, was not frivolous or malicious, and did not burden the State.

Based on the language of Tennessee Code Annotated sections 41-21-801 to -818 and its legislative history, the act does not apply to prevent Mr. Hughes from filing this case because he owed $49.50 in court costs from a divorce case dismissed many years ago. The court costs from Mr. Hughes's ill-fated divorce filing were not assessed or incurred *under this part* or any part of the act. Moreover, had the clerk followed Tennessee Code Annotated section 41-21-808(b), the costs presumably would have been paid out of Mr. Hughes's inmate trust account. Finally, the language of Tennessee Code Annotated sections 41-21-801 to -818 and its legislative history indicate that the General Assembly enacted it to stem the flow of frivolous inmate filings that were burdening the court system and costing taxpayer dollars to defend.

---

[6] In *Sweatt v. Tennessee Department of Correction*, 99 S.W.3d 112, 215 (Tenn. Ct. App. 2002), the Court of Appeals construed section 41-21-812 to apply to validly assessed unpaid costs from all prior cases, not only those found to be malicious or frivolous. However, in *Sweatt*, the inmate had filed eight cases determined to be frivolous and owed over $1,200 in costs. *Id.*

Applying Tennessee Code Annotated section 41-21-812(a) to bar Mr. Hughes from obtaining judicial review of the Board's decision to deny him parole based on $49.50 in unpaid court costs from a non-frivolous, non-malicious divorce case that he had a right to file, that was filed before the enactment of the statute, and did not involve or burden the State is a misapplication of the act and results in a gross injustice to Mr. Hughes.

For the reasons stated, I would not deny Mr. Hughes access to the courthouse.

_____
SHARON G. LEE, JUSTICE