IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 26, 2024 Session

## THE WISE GROUP, INC. ET AL. v. DWIGHT HOLLAND ET AL.

**Appeal from the Chancery Court for Davidson County**
No. 19-829-III        I'Ashea L. Myles, Chancellor

_____

### No. M2023-00366-COA-R3-CV

_____

Appellees brought suit under the Tennessee Uniform Fraudulent Transfer Act to recover attorney's fees incurred in attempting to collect an underlying judgment from one of the Appellants. The trial court awarded Appellees' attorney's fees. Because the Act does not authorize the recovery of attorney's fees, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and JOHN W. MCCLARTY, J., joined.

Mark Alexander Carver, Nashville, Tennessee, for the appellants, LAH, LLC, Dwight Holland, and LD Consulting, LLC.

Nicholas D. Bulso, Brentwood, Tennessee, for the appellees, the Lux Development Group, LLC and the Wise Group, Inc.[1]

## OPINION

### I. Background

This case has a complicated procedural history. However, in the interest of judicial economy, we discuss only the facts and procedure relevant to this appeal.

Alan Wise formed two entities to conduct his real estate and construction ventures:

---

[1] Original defendants Americana Birds & Bees, LLC, Jeffrey Holland, Toni Rutgerson, and Dominion Real Estate, LLC are not parties to this appeal.

The Wise Group, Inc. (the "Wise Group") and the Lux Development Group, LLC (the "Lux Group") (together, "Appellees" or "Wise and Lux"). In 2011, the Wise Group acquired land known as "Aaron's Cress." Thereafter, Mr. Wise hired James Dwight Holland as a consultant to help develop the property.[2] The Lux Group paid Mr. Holland $120,000.00 per year as a consultant. Also, Mr. Holland lived in a property the Wise Group owned. The Wise Group charged Mr. Holland $1,000.00 per month in rent, and the rental amount was withheld from Mr. Holland's monthly paycheck. As part of the agreement, Mr. Holland made an excavator and a mini bulldozer available for the Lux Group's use. Mr. Holland's first paycheck was made payable to him individually. Thereafter, Mr. Holland asked that all paychecks be made payable to LD Consulting, LLC ("LD Consulting").[3]

In August 2015, LD Consulting purchased 4329 Central Pike in Hermitage, Tennessee. While Mr. Wise was on medical leave, Mr. Holland charged thousands of dollars to the Lux Group to build a personal residence at 4329 Central Pike. On this discovery, Mr. Wise terminated Mr. Holland's employment with the Lux Group, and Mr. Holland stopped paying rent to the Wise Group.

In early 2018, Wise and Lux filed suit against Mr. Holland and LD Consulting in the Davidson County Circuit Court (the "Circuit Court case"). In their lawsuit, Wise and Lux sought to recover unpaid rent and to recoup misappropriated funds. On September 7, 2018, during the pendency of the Circuit Court case, LD Consulting quitclaimed 4329 Central Pike to Americana Birds & Bees, LLC ("Americana"), which was owned and controlled by Mr. Holland's son, Jeffrey Holland. Jeffrey Holland paid no consideration for the transfer of the property.

On April 30, 2019, Wise and Lux were awarded a $35,124.24 judgment against Mr. Holland. On May 15, 2019, Americana quitclaimed 4329 Central Pike to LAH, LLC ("LAH") (together with Mr. Holland and LD Consulting, "Appellants"). Mr. Holland is the sole member and director of LAH. LAH paid no consideration for the transfer of the property. Wise and Lux filed a judgment lien against Mr. Holland on June 3, 2019.

On June 10, 2019, Mr. Holland, acting through LAH, closed the sale of 4329 Central Pike to Dominion Real Estate, LLC ("Dominion") for a purchase price of $350,000.00. On June 12, 2019, LAH conveyed 4329 Central Pike to Dominion.

On June 28, 2019, Mr. Holland filed a Chapter 12 bankruptcy petition. Wise and Lux filed a motion to dismiss the petition, alleging numerous omissions and misrepresentations in Mr. Holland's petition.

---

[2] Aaron's Cress was previously owned by Hermitage Developers, Inc. ("Hermitage Developers"), Mr. Holland's company. Hermitage Developers defaulted on the mortgage payments for Aaron's Cress, and the land was sold at foreclosure to the Wise Group.

[3] Mr. Holland formed LD Consulting on July 9, 2015.

On July 10, 2019, Wise and Lux filed a complaint in the Davidson County Chancery Court (the "trial court") seeking a declaratory judgment to void the September 7, 2018 quitclaim of 4329 Central Pike from LD Consulting to Americana so that ownership of the property remained with LD Consulting. In the alternative, Wise and Lux asked the trial court to set aside a series of fraudulent transfers "orchestrated by the defendants to avoid the collection efforts" of Wise and Lux. The named defendants in Wise and Lux's lawsuit were: (1) LD Consulting; (2) LAH; (3) Jeffrey Holland; (4) Toni Rutgerson; and (5) Dominion.[4] Wise and Lux did not name Mr. Holland individually due to his pending bankruptcy petition. On August 5, 2019, Wise and Lux filed an Amended Complaint, adding Americana as a defendant. On September 25, 2019, the trial court dismissed the amended complaint on the ground that standing to pursue Wise and Lux's fraudulent transfer claims was vested solely in the trustee for Mr. Holland's bankruptcy estate.

On October 28, 2019, the bankruptcy court heard the motion to dismiss Mr. Holland's petition. The bankruptcy court granted the motion, holding that Mr. Holland's "case was filed in bad faith for the purpose of abusing the bankruptcy system in the interest of delaying creditors." Also, on October 28, 2019, Wise and Lux filed, in the trial court, an Emergency Motion for Rule 16 Conference, alerting the trial court to the dismissal of the bankruptcy petition. On October 29, 2019, Wise and Lux filed an expedited motion to alter or amend and an expedited motion to amend seeking to vacate the trial court's dismissal of the case and seeking to file an amended complaint joining Mr. Holland as a defendant. On October 30, 2019, the trial court granted these motions. The next day, LAH paid Wise and Lux $35,124.24 in satisfaction of the Circuit Court judgment against Mr. Holland. On November 1, 2019, Wise and Lux recorded their notice of satisfaction of judgment releasing their lien.

Also, on November 1, 2019, Wise and Lux filed their second amended complaint, adding Mr. Holland as a defendant. The second amended complaint alleged fraudulent transfer under the Tennessee Uniform Fraudulent Transfer Act ("UFTA") and also alleged civil conspiracy claims. Wise and Lux asked for a judgment of $35,124.24 in compensatory damages, an award of punitive damages, and for an award of "such other relief as may be just, equitable, and proper." Mr. Holland filed an answer to the second amended complaint.[5]

On February 24, 2020, the parties participated in a settlement conference. At that time, Wise and Lux reached a settlement with Ms. Rutgerson but were unsuccessful in

---

[4] On September 4, 2020, the trial court entered an order granting Dominion's motion for summary judgment, wherein it concluded that Dominion purchased 4329 Central Pike in good faith. On January 5, 2022, this Court affirmed the trial court's grant of summary judgment. *See* ***Wise Group, Inc. v. Holland***, No. M2020-01646-COA-R3-CV, 2023 WL 2726974 (Tenn. Ct. App. Mar. 31, 2023).

[5] Several months later, after Wise and Lux filed motions for default judgments, LD Consulting, LAH, Americana, and Jeffrey Holland responded to the second amended complaint.

mediating their claims with the other defendants. On April 17, 2020, the trial court dismissed, with prejudice, Wise and Lux's lawsuit against Ms. Rutgerson.

On March 21, 2022, the trial court heard the second amended complaint. The trial court heard testimony concerning the attorney's fees and expenses Wise and Lux incurred in the Circuit Court, bankruptcy, and Chancery Court actions. On April 26, 2022, the trial court entered its memorandum and final order. Therein, the trial court held that, while Appellants engaged in fraudulent transfers, the remaining defendants were not liable under the UFTA. A series of motions to alter or amend and subsequent orders, discussed *infra*, followed the April 26, 2022 order. Ultimately, the trial court awarded Wise and Lux a $69,123.83 judgment against Appellants, jointly and severally, for their fraudulent transfers. Appellants filed a timely appeal. On appeal, Appellants ask this Court to reverse the $69,123.83 judgment. Appellees ask this Court to vacate the $69,123.83 judgment and to award them $89,123.83, the full amount of attorney's fees Wise and Lux incurred.

## II. Issues

Appellants raise two issues for review, as stated in their brief:

1. Does the Uniform Fraudulent Transfer Act's catch-all remedy provision, Tenn. Code Ann. § 66-3-308(a)(3)(C), specifically and expressly authorize the trial court's award of attorney's fees in this case?

2. Does a former creditor have statutory standing to sue under the Uniform Fraudulent Transfer Act, Tenn. Code Ann. § 66-3-301 *et seq.*, after the underlying debt has been satisfied?

Appellees re-state Appellants' two issues and raise an additional two issues, as stated in their brief:

1. Had the trial court awarded the Plaintiffs their attorney's fees as the prevailing party in this action—relief which the Plaintiffs neither sought nor obtained—would Tennessee Code Annotated [s]ection 66-3-308(a)(3)(C)'s use of "any other relief" have encompassed such an award?

2. Is a creditor's standing pursuant to the Uniform Fraudulent Transfer[] Act determined at the time of filing of the original complaint or at the time of filing of any later amended complaint?

3. The Defendants waited until after the trial court granted the Plaintiffs['] motion to alter or amend to seek new relief unrelated to the modified portions of the judgment. Could the Defendants seek to modify the original portions of the judgment in any way whatsoever after more than thirty days had passed?

4. Chancellor Lyle awarded the Plaintiffs monetary damages of $89,123.83 pursuant to [s]ection 66-3-308(a)(3)(C). Chancellor Myles reduced the Plaintiffs['] judgment by $20,000.00—an amount not supported by any evidence and only used because the Defendants requested it—under the mistaken belief that Chancellor Lyle had awarded the Plaintiffs their attorney's fees as the prevailing party. Did Chancellor Myles abuse her discretion when she reduced the Plaintiff[s'] judgment by an arbitrary amount based on a clearly erroneous assessment of what Chancellor Lyle had done?

## III. Standard of Review

We review a non-jury case "*de novo* upon the record with a presumption of correctness as to the findings of fact, unless the preponderance of the evidence is otherwise." ***Bowden v. Ward***, 27 S.W.3d 913, 916 (Tenn. 2000) (citing Tenn. R. App. P. 13(d)). The trial court's conclusions of law are reviewed *de novo* and "are accorded no presumption of correctness." ***Brunswick Acceptance Co., LLC v. MEJ, LLC***, 292 S.W.3d 638, 642 (Tenn. 2008). Because statutory interpretation is a question of law, we also review the trial court's interpretation of any statute *de novo* with no presumption of correctness. ***In re Estate of Tanner***, 295 S.W.3d 610, 613 (Tenn. 2009).

## IV. Analysis

### A. Appellants' August 5, 2022 Motion to Alter or Amend

We first address Appellees' procedural issue, *i.e.,* whether Appellants were allowed to seek modification of the July 7, 2022 amended judgment. As noted above, a series of motions to alter or amend and subsequent orders followed the entry of the trial court's April 26, 2022 order. A brief review of the relevant motions and orders is necessary before continuing with our analysis.

On April 26, 2022, the trial court entered its memorandum and final order. Therein, the trial court found that Wise and Lux incurred $89,123.83 in attorney's fees and expenses in their attempt to collect the Circuit Court judgment. The trial court concluded that it could not award Wise and Lux the $29,245.00 in fees and expenses incurred in the bankruptcy court. Accordingly, it awarded Appellees a judgment of $59,878.83 against Appellants, jointly and severally, "for attorneys' fees and expenses [Appellees] incurred resulting from [Appellants] engaging in fraudulent transfers." On May 26, 2022, Appellees filed a motion to alter or amend the April 26, 2022 order, asking the trial court to include the $29,245.00 of fees and expenses incurred during the bankruptcy proceeding. On July 7, 2022, the trial court entered an order granting the motion to alter or amend. Therein, the trial court amended its judgment to include the $29,245.00 incurred in the bankruptcy court, thus increasing the judgment against Appellants to $89,123.83.

On August 5, 2022, Appellants filed a motion to alter or amend the July 7, 2022 amended order. Therein, they argued that the trial court's award of the additional $29,245.00 in attorney's fees and expenses would result in an excessive recovery because Appellees allegedly obtained $25,000.00 in settlement with Ms. Rutgerson. Accordingly, Appellants argued that the trial court should reduce the judgment by the amount of Appellees' settlement with Ms. Rutgerson. Around this time, Chancellor Ellen Hobbs Lyle, who had been presiding over the case, retired, and Chancellor I'Ashea L. Myles was assigned to the case.

On September 29, 2022, Chancellor Myles entered an order granting Appellants' motion to alter or amend, wherein she reduced the judgment by $20,000.00, making it $69,123.83. The trial court relied on the settlement agreement between Appellees and Ms. Rutgerson and found the settlement amount to be $20,000.00. Although additional motions to alter or amend and subsequent orders followed the September 29, 2022 order, those motions and orders are not relevant to this issue, so we will not discuss them here.

On appeal, Appellees argue that Tennessee Rule of Civil Procedure Rule 59 "did not permit [Appellants'] attempt to obtain new relief [in their August 5, 2022 motion] unrelated to the modifications in the July 7, 2022 [order]." Specifically, Appellees contend that Appellants' August 5, 2022 motion "sought no relief related to the portion of the [April 26, 2022] [order] actually modified by the July 7, 2022 [order,] [r]ather, [Appellants] sought to reduce the damages recovered by [Appellees] by the amount of their settlement with [Ms.] Rutgerson." Appellees argue that, if Appellants desired such relief, they should have raised the issue after entry of the April 26, 2022 order. They further argue that because Chancellor Myles erred in considering the August 5, 2022 motion to alter or amend, any subsequent orders, including the September 29, 2022 order, were void.

We review a trial court's ruling on a motion to alter or amend under an abuse of discretion standard. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). Rule 59.04 is not as inflexible as Appellees argue. Under Rule 59.04, a party may file a motion to alter or amend a judgment within thirty (30) days after the entry of the judgment. Tenn. R. Civ. P. 59.04. A court may grant a motion to alter or amend when: (1) the controlling law changes before the judgment becomes final; (2) previously unavailable evidence becomes available; or (3) for *sui generis* reasons, a judgment should be amended to correct a clear error of law or to prevent injustice. *Bradley v. McLeod*, 984 S.W.2d 929, 933 (Tenn. Ct. App. 1998) (distinguished from the issues in *Harris v. Chern*, 33 S.W.3d 741 (Tenn. 2000)). However, "[a] Rule 59 motion should not be used to raise or present new, previously untried or unasserted theories or legal arguments." *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005). "The purpose of a Rule 59 motion to alter or amend a judgment is to prevent unnecessary appeals by providing the trial court with an opportunity to correct errors before the judgment becomes final." *Legens v. Lecornu*, No. W2013-01800-COA-R3-CV, 2014 WL 2922358, at *13 (Tenn. Ct. App. June 26, 2014) (citing

*Discover Bank v. Morgan*, 363 S.W.3d 479, 489 (Tenn. 2012)).  While parties are not permitted to file "post-trial motions in a serial manner in an attempt to extend the time to appeal," *Albert v. Frye*, 145 S.W.3d 526, 528 (Tenn. 2004) (citing *Gassaway v. Patty*, 604 S.W.2d 60, 61 (Tenn. Ct. App. 1980)), it is well-established that "[a] party can file a motion to alter or amend a judgment that has been changed in response to another party's Rule 59 motion." *Legens*, 2014 WL 2922358, at *12 (citing *Albert*, 145 S.W.3d at 528); *see also Savage v. Hildenbrandt*, No. M1999-00630-COA-R3-CV, 2001 WL 1013056, at *8 (Tenn. Ct. App. Sept. 6, 2001); *Brenneman v. Brenneman*, M2000-00890-COA-R3-CV, 2001 WL 543434, at *3 (Tenn. Ct. App. May 23, 2001).  Furthermore, a party may file a motion to alter or amend in response to an amended judgment even when that party successfully moved for the amended judgment, assuming that the second motion is not simply a motion to reconsider previously asserted grounds.  *See Legens*, 2014 WL 2922358, at *13.

On April 26, 2022, the trial court entered a judgment in favor of Appellees for $59,878.83.  Thereafter, Appellees filed a motion to alter or amend the order, asking the trial court to increase the judgment amount by $29,245.00.  As a result, on July 7, 2022, the trial court amended the previous order and increased the judgment against Appellants to $89,123.83.  Subsequently, Appellants filed a motion to alter or amend, arguing that, for *sui generis* reasons, the trial court should amend the judgment to prevent an injustice.  *See Bradley*, 984 S.W.2d at 933.  Specifically, Appellants argued that, when it increased the judgment against them by $29,245.00, the trial court granted Appellees an award *in excess* of their attorney's fees and costs as Appellees had already recovered settlement proceeds from Ms. Rutgerson.  On this Court's review, Appellants made a similar argument at the final trial.  From the trial transcript, Appellants solicited testimony from Appellees' attorney confirming that "part of the $8[9],000 . . . that [Appellees were] seeking [against Appellants] . . . include[d] time dealing with the claims against Ms. Rutgerson and Ms. Rutgerson's counterclaims."  In closing arguments, Appellants argued that Appellees settled with Ms. Rutgerson and that "any time [Appellees] incurred fighting with Ms. Rutgerson should not be awarded against [Appellants]."  In short, Appellants did not raise this argument for the first time in their motion to alter or amend.  Thus, Rule 59.04 does not bar Appellants' motion asking the trial court to amend its July 7, 2022 judgment to avoid excessive recovery by Appellees, *see Bradley*, 984 S.W.2d at 933, and the trial court did not abuse its discretion in considering this question.  We now turn to review the substantive issues.

## B.  Judgment Against Appellants

In considering the trial court's judgment of $69,123.83 against Appellants, it is necessary that we review the trial court's orders following the parties' motions to alter or amend.  As discussed above, on September 29, 2022, the trial court entered an order granting Appellants' motion to alter or amend and reducing the judgment against them to $69,123.83.  Thereafter, Appellees filed a motion to alter or amend.  On December 5, 2022,

the trial court entered an order granting the motion in part and denying it in part. The trial court affirmed the $69,123.83 judgment against Appellants but amended its legal analysis, discussed *infra*. In so doing, the trial court reviewed its July 7, 2022 order, *i.e.,* Chancellor Lyle's order amending the April 26, 2022 order, discussed *supra* and *infra*. All parties filed motions to alter or amend the December 5, 2022 order. On February 10, 2023, the trial court entered an order denying both motions to alter or amend, which order gave rise to this appeal. While the February 10, 2023 order is the final order in this case, because that order was predicated on the December 5, 2022 order, which reviewed the July 7, 2022 order, we must also review these orders. Before turning to the substantive issue, we address whether the trial court awarded attorney's fees (as Appellants argue) or monetary damages (as Appellees argue).

### 1. Trial Court Awarded Attorney's Fees

On appeal, Appellees argue that the trial court awarded them monetary damages as opposed to attorney's fees. Turning to the July 7, 2022 order, the trial court first detailed: (1) the undisputed background facts; (2) a summary of Appellees' claims "for recovering the attorney's fees and expenses"; and (3) a summary of the final trial before concluding:

> After studying the law and reviewing the evidence, and considering argument of Counsel, it is ORDERED that upon applying Tennessee Code Annotated sections 66-3-305, 66-3-308 and 66-3-309, [Appellees] ***are awarded a judgment of $89,123.83 jointly and severally against [Appellants] for attorneys' fees and expenses [Appellees] incurred resulting from these [Appellants] engaging in fraudulent transfers.*** The [c]ourt awards attorneys' fees and damages because the real property conveyed as part of the fraudulent transfers was sold to a non-party and is not available for recovery. ***Under these circumstances, Tennessee Code Annotated section 66-3-308(a)(3)(C) authorizes recovery of attorneys' fees and expenses.***

(Emphases added). Thereafter, the trial court made specific findings of fact and conclusions of law, wherein it identified that the "relief sought in this case" was for "[r]ecovery of [a]ttorneys' [f]ees and [e]xpenses" and discussed Appellants' liability "for [Appellees'] [a]ttorneys' [f]ees and [e]xpenses." The trial court then explained that Appellees argued that they were "entitled to recover the attorneys' fees and expenses they expended before the [Circuit Court judgment] was paid." Such argument was predicated "on the following bases": (1) monetary damages, such as attorney's fees, under section 66-3-308(a)(1); (2) "any other relief the circumstances may require" under section 66-3-308(a)(3)(C); and (3) as punitive damages under section 66-3-308(a)(3)(C). The trial court then cited to caselaw from other jurisdictions, "which allow recovery of attorneys' fees in connection with fraudulent transfers, either under section 66-3-308 'as the circumstances may require' or as punitive damages." The only paragraph Appellees cite as proof that the trial court awarded monetary damages follows the foregoing, to-wit:

> From ***Hansard Const. Corp. v. Rite Aid of Florida, Inc.*** 783 So. 2d 307,
> 308-09 (Fla. Dist. Ct. App. 2001) and ***Profecta v. Lombardo***, 75 Ohio
> App.3d 621, 600 N.E.2d 360, 363-64 (Ohio Ct. App. 1991), the [c]ourt
> concludes that under Tennessee law monetary damages, including attorneys'
> fees and expenses, are recoverable under section 66-3-308(a)(3)(C) as "any
> other relief the circumstances may require" and this is the basis for
> [Appellees'] recovery against Defendants Dwight Holland and LD
> Consulting, LLC.

The above language must be read in the context of the trial court's entire order, discussed
*supra*. Taken in context of the entire order, it is clear that the trial court awarded Appellees
attorney's fees incurred in attempting to collect the Circuit Court judgment and in opposing
Mr. Holland's bankruptcy petition. We now turn to whether the trial court erred in
awarding these fees.

## 2. Trial Court Erred in Awarding Attorney's Fees

The trial court's orders present us with a legal quagmire. As discussed above, in its
July 7, 2022 order, the trial court, Chancellor Lyle, awarded Appellees attorney's fees
under section 66-3-308(a)(3)(C), the UFTA's "catch-all" provision, discussed *infra*. In so
doing, the trial court cited to cases *from other jurisdictions* that awarded monetary damages
under their respective fraudulent transfer acts. The trial court, Chancellor Myles, revisited
the July 7, 2022 order in the December 5, 2022 order, to-wit:

> A meticulous analysis of the law and the reasoning set forth in the July 7,
> 2022 final order, prompted by [Appellees'] Second Motion to Alter and
> Amend, has emphasized to this [c]ourt that the basis for the July 7th award of
> Eighty-Nine Thousand, One Hundred Twenty-Three Dollars and 83/100
> ($89,123.83) in attorneys' fees is not supported by Tennessee case law. This
> [c]ourt is further concerned that the award of attorneys' fees as damages in
> this case is in direct opposition to the longstanding Tennessee jurisprudence
> on the American Rule and the legislative intent of the [UFTA].

The law in Tennessee concerning awards of attorney's fees is clear. This
Court has explained that

> "Tennessee has long followed the 'American Rule' with regard to attorney's
> fees." ***Eberbach v. Eberbach***, 535 S.W.3d 467, 474 (Tenn. 2017) (citing
> ***State v. Brown & Williamson Tobacco Corp.***, 18 S.W.3d 186, 194 (Tenn.
> 2000)). The American Rule provides that "a party in a civil action may
> recover attorney's fees only if: (1) a contractual or statutory provision creates
> a right to recover attorney's fees; or (2) some other recognized exception to

- 9 -

the American Rule applies, allowing for recovery of such fees in a particular case." *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009) (citing *Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005)).

*Nandigam Neurology, PLC v. Beavers*, 639 S.W.3d 651, 669 (Tenn. Ct. App. 2021). Under the American Rule, the trial court could have awarded Appellees their attorney's fees *only if*: (1) a contractual or statutory provision created a right for Appellees to recover attorney's fees; or (2) another recognized exception to the American Rule applied. *Id.* Nevertheless, despite its conclusion that an award of "attorneys' fees [was] not supported by Tennessee case law," the trial court awarded Appellees $69,123.83 in attorney's fees, stating that it was "constrained in the amount of its reduction" because Appellants asked for a reduction of only $20,000.00.

In its final order, the trial court denied both motions to alter or amend the December 5, 2022 order. In so doing, the trial court ruled:[6]

> We have the statutory language that basically has a catchall provision. And then we have the American rule that says if you're going to award attorney's fees, it has to be expressed. And it is not expressed in the Uniform Fraudulent Transfer Act. The [c]ourt is unwilling to vacate the full amount, and the [c]ourt is unwilling to reinstate the full amount. Frankly, I think that I interpreted the law correctly, based on what [Appellants] asked first in their first ask to reduce the judgment.
>
> ***
>
> And I frankly think that this is ripe for the Court of Appeals to determine what the law is because the way I analyze it, attorney's fees as damages is not permissible under that statute.

In their opening brief, Appellants argue that the UFTA's catch-all provision does not allow for recovery of attorney's fees. In their responsive brief, Appellees argue that there are two exceptions to the American Rule that would allow them to recover attorney's fees, *i.e.*: (1) the Independent Tort Theory; and (2) the UFTA's catch-all provision. In their reply brief, Appellants argue that: (1) Appellees waived their Independent Tort Theory argument; and (2) the Independent Tort Theory does not apply. We turn to these arguments.

### i. The Independent Tort Theory

---

[6] The trial court incorporated its oral ruling from the hearing into its order.

"The ***Pullman Standard*** independent tort exception to the American Rule applies when a party, 'through the tort of another[,] has been required to act in the protection of his interests by bringing or defending an action against a third person. . . .'" ***King v. Chase***, No. M2019-01084-COA-R3-CV, 2021 WL 1017160, at *34 (Tenn. Ct. App. Mar. 17, 2021) (quoting ***Pullman Standard, Inc. v. Abex Corp.***, 693 S.W.2d 336, 339-40 (Tenn. 1985)). Appellees did not plead the independent tort theory in their second amended complaint; they pled fraudulent transfer, *i.e.,* violation of the UFTA, and civil conspiracy claims. At oral argument before this Court, counsel for Appellees stated that they did not plead the independent tort theory as a stand-alone claim because they believed it to be a method of recovery. From the record, it does not appear that Appellees argued this method of recovery at the final trial. In their trial brief, Appellees argued that their damages could be characterized in any one of three ways: (1) monetary damages under section 66-3-308(a)(1); (2) a standalone award of attorney's fees under section 66-3-308(a)(3)(C); or (3) an award of punitive damages under section 66-3-308(a)(3)(C). On review of the trial transcript, Appellees did not argue the independent tort theory at trial. As discussed, *supra*, the trial court awarded Appellees attorney's fees under section 66-3-308(a)(3)(C) of the UFTA with no mention of the independent tort theory as the method of recovery. Indeed, there is no mention of the independent tort theory in any of the trial court's orders.

From our review, Appellees only briefly mentioned the independent tort theory in three trial court filings. First, the theory is mentioned in one sentence of Appellees' November 8, 2019 motion for prejudgment attachment or temporary injunction. Therein, Appellees stated that the trial court could award Appellees "the attorney's fees and expenses they incurred procuring the dismissal of [Mr.] Holland's bankruptcy petition and the fees and expenses they" had incurred in the case and could do so based on section 66-3-308(a)(3)(C) *or* on the independent tort theory. Then, in a June 8, 2022 reply in further support of their motion to alter or amend the April 26, 2022 order, Appellees briefly mentioned the "tort of another" doctrine in a footnote. Specifically, Appellees argued that that the bankruptcy court "could not have awarded any relief against [LD Consulting or LAH], notwithstanding the remedies provided by the [UFTA] as well as the 'tort of another' doctrine."

In their appellate reply brief, Appellees argue that they did not "expend[] much time or effort [on their independent tort theory argument] until Chancellor Myles switched horses in her December 5, 2022 [o]rder," at which point their arguments "became more focused, such that" Appellees did not waive the independent tort theory argument. The record does not support this contention. On our review, the only other mention of the independent tort theory in Appellees' trial court filings occurs in a footnote to their January 25, 2023 reply brief in further support of their motion to alter or amend the December 5, 2022 order. Therein, Appellees merely noted that other jurisdictions have combined their versions of section 66-3-308(a)(3)(C) and section 66-3-311 "with the 'bad faith' exception to the American Rule and the 'tort of another' doctrine to award attorney's fees in fraudulent transfer cases." However, Appellees did not argue the independent tort theory

at the January 27, 2023 hearing on the parties' motions to alter or amend the trial court's December 5, 2022 order.  In short, Appellees did not specifically argue the independent tort theory in the trial court.  Now, on appeal, Appellees devote several pages of their briefing to the argument that the independent tort theory applies to allow them to recover, as compensatory damages, the reasonable attorney's fees they incurred in their attempts to satisfy their judgment against Mr. Holland.

We conclude that Appellees have waived their independent tort theory argument for two reasons.  First, "[it] has long been the general rule that questions not raised in the trial court will not be entertained on appeal[.]"  *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983).  Because Appellees did not argue the independent tort theory in the trial court, it is waived on appeal.  Second, Appellees failed to state, as an issue for this Court's review, whether the independent tort theory applies to the facts of this case.  "Tennessee Rule of Appellate Procedure 27(b) provides that if an appellee requests relief from this Court, 'the brief of the appellee *shall* contain the issues and arguments involved in his request for relief . . . .'"  *In re Estate of Stokes*, No. W2021-00249-COA-R3-CV, 2022 WL 484565, at *6 (Tenn. Ct. App. Feb. 17, 2022) (emphasis in original) (quoting Tenn. R. App. P. 27(b)).  Thus, if the appellee desires this Court to review an issue separate from an issue the appellant has raised, the appellee must include it in *their* statement of issues presented for review.  It is also well-settled that "[a]ny issue not included in the statement of issues presented for review as required by Tennessee Rule of Appellate Procedure 27(b), is not properly before the Court of Appeals."  *In re Estate of Stokes*, 2022 WL 484565, at *6 (citing *Hawkins v. Hart*, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001)).  Accordingly, even if Appellees argued the independent tort theory before the trial court, the issue would have nevertheless been waived on appeal for failure to raise it.

### ii.  The UFTA's "Catch-All" Provision (Section 66-3-308(a)(3)(C))

As noted above, the trial court awarded Appellees attorney's fees and expenses under Tennessee Code Annotated section 66-3-308(a)(3)(C).  Thus, the gravamen of the appeal is whether the UFTA's catch-all provision allows for the recovery of attorney's fees.  This appears to be an issue of first impression in Tennessee.

Tennessee Code Annotated section 66-3-308(a) provides:

(a) In an action for relief against a transfer or obligation under this part, a creditor, subject to the limitations in § 66-3-309, may obtain:

(1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;

(2) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by title 26;

(3) *Subject to applicable principles of equity* and in accordance with applicable rules of civil procedure:

> (A) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

> (B) Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

> (C) *Any other relief the circumstances may require*.

Tenn. Code Ann. § 66-3-308(a) (emphases added). Again, we note that statutory interpretation is a question of law, which we review *de novo* with no presumption of correctness. *In re Estate of Tanner*, 295 S.W.3d at 613. When interpreting any statute, a court's duty is to ascertain and fully effectuate the "legislative intent [of the statute], taking care not to broaden [it] beyond its intended scope . . . ." *Womack v. Corr. Corp. of Am.*, 448 S.W.3d 362, 366 (Tenn. 2014) (citing *Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 420 (Tenn. 2013); *Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009)). As the Tennessee Supreme Court has explained, "[o]ur analysis naturally begins with the words used in the statute," *Womack*, 448 S.W.3d at 366 (citing *Shore*, 411 S.W.3d at 420), and we must interpret those words under their "natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Id.* (quoting *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012)).

We first examine the statutory context where the phrase "any other relief the circumstances may require" appears. Under the statute, in an action for relief against a transfer, a creditor has three options: (1) avoidance of the transfer or obligation; (2) an attachment against the asset transferred or other property of the transferee; or (3) subject to applicable principles of equity, three additional options. Those additional options are: (1) an injunction; (2) the appointment of a receiver to take charge of the asset; or (3) any other relief the circumstances may require.

The bill summary for SB 0614, which was codified at section 66-3-308, follows the above outline. The bill summary provides, in pertinent part:

> Similar to present law, this bill would authorize a creditor to obtain, in regard to a fraudulent transfer:

> (1) Avoidance of the transfer or obligation;

- 13 -

(2) An attachment against the asset transferred; or

(3) An injunction, appointment of a receiver, ***or other equitable relief***.

Tenn. Bill Summary, 2003 Reg. Sess. S.B. 0614 (emphasis added). The first option in the bill summary correlates with section 66-3-308(a)(1) (avoidance of transfer or obligation); the second option correlates with 66-3-308(a)(2) (attachment against asset or other property); and the third options correlates with 66-3-308(a)(3). Notably, the third option provides for: (1) an injunction, *see* Tenn. Code Ann. § 66-3-308(a)(3)(A); (2) the appointment of a receiver, *see* Tenn. Code Ann. § 66-3-308(a)(3)(B); or (3) "other *equitable* relief," *see* Tenn. Code Ann. § 66-3-308(a)(3)(C). An equitable remedy is generally "a nonmonetary [remedy] such as an injunction or specific performance, obtained when available legal remedies, usually monetary damages, cannot adequately redress the injury." Remedy, *Black's Law Dictionary* (11th ed. 2019). The Tennessee Supreme Court has noted that, "[a]lthough a bill summary, compiled by a legislative service, does not recite the intent of any legislator regarding a particular bill, [it is] instructive because it is provided to legislators to explain the perceived need for the proposed legislation." ***Am. Heritage Apartments, Inc. v. Hamilton Cnty. Water & Wastewater Treatment Auth.***, 494 S.W.3d 31, 49 fn.24 (Tenn. 2016). Taking care to interpret the language used in the statute in context and referring to the legislative history, we conclude that the Tennessee Legislature intended "any other relief the circumstances may require" to include equitable relief only. From our reading, the Legislature did not intend to include attorney's fees in this catch-all phrase, because: (1) it is the third option in a series of other equitable remedies, *i.e.,* an injunction or the appointment of a receiver, *see* ***Indus. Dev. Bd. of City of Tullahoma v. Hancock***, 901 S.W.2d 382, 384 (Tenn. Ct. App. 1995) (explaining that an injunction is a remedy that is "inherently equitable"); ***Cochran v. L.V.R. & R.C., Inc.***, No. M2004-01382-COA-R3-CV, 2005 WL 2217067, at *6 (Tenn. Ct. App. Sept. 12, 2005) (explaining that the appointment of a receiver is a remedy within a court's "equitable discretion"); and (2) the bill summary's reference to equitable relief correlates with section 66-3-308(a)(3)(C).

If this Court were to interpret "any other relief the circumstances may require" to include an award of attorney's fees, we would be broadening the statute beyond the Tennessee Legislature's intended scope. *See* ***Womack***, 448 S.W.3d at 366 (citing ***Shore***, 411 S.W.3d at 420; ***Carter***, 279 S.W.3d at 564). It is well-settled that there must be a "clear intent" in the statute to allow a prevailing party to recover attorney's fees before such fees may be awarded. ***Cracker Barrel***, 284 S.W.3d at 313-14. Indeed, if the Tennessee Legislature intended for a creditor to recover attorney's fees under section 66-3-308(a)(3)(C), it could have expressly included such provision as it has done in many other statutes. *See, e.g.*, Tenn. Code Ann. § 20-17-107(a)(1) (mandating an award of attorney's fees under the Tennessee Public Participation Act); Tenn. Code Ann. § 47-18-109(e)(1) (awarding attorney's fees under the Tennessee Consumer Protection Act); Tenn. Code Ann. § 20-12-119(c)(1) (mandating an award of reasonable attorney's fees incurred when a party is successful on a motion to dismiss for failure to state a claim). Such express

- 14 -

language is absent from Tennessee Code Annotated section 66-3-308(a)(3)(C). Accordingly, we conclude that the UFTA's catch-all provision does not allow a party to recover attorney's fees. The fact that Appellants asked for a reduction of only $20,000.00 does not affect our interpretation because, if the law does not provide for an award of attorney's fees, a court cannot award them. Accordingly, we reverse the trial court's award of attorney's fees to Appellees.[7]

## V. Conclusion

For the foregoing reasons, we reverse the trial court's order. The case is remanded for such further proceedings as are necessary and consistent with this opinion. Costs of the appeal are assessed to the Appellees, the Lux Development Group, LLC and the Wise Group, Inc., for all of which execution may issue if necessary.

s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE

---

[7] Given our conclusion, all other issues are pretermitted as moot.